THE STATE ex rel. G. E. MUNS et al. v. GEORGE E. HACKMANN, State Auditor.

In Banc, June 26, 1920.

1. **MANDAMUS: Demurrer to Writ: Facts.** A demurrer to the petition for a writ of mandamus puts the cause at issue, and the allegations of fact stand admitted.

2. **SCHOOL BUILDING: Bonds to Erect High School.** The statute (Sec. 10777, R. S. 1909) does not in terms distinguish between grade school buildings and high school buildings. In so far as it relates to buildings, it gives to the school board power to call an election ·to vote bonds for "erecting school buildings," and those include buildings for use for any and all schools the. board may or must establish, whether they be grade schools or a high school. All schools under the authority and control of the district board form a system which constitutes the common or public school or schools of the district.

3. ————: ————: **Notice and Bonds.** Where the notice of an election stated that the purpose was to authorize the board to issue bonds "for the erection of a school building," the designation of the building in the bonds and in the contract as a "high school building" is not of such consequence as to afford a just cause for a refusal by the State Auditor to register the bonds.

4. ————: **Election: Hours from Two to Six.** Section 10777, Revised Statutes 1909, does not fix the hours for holding a special election for voting bonds to erect a school building; and if such election must be conducted in the manner provided by law for other elections by the same body, all the statutes relating to such other elections become pertinent, and when all of them are considered it is clear that they do not require such election to be held from

seven o'clock a. m. to six o'clock p. m.  A special election for such purpose, held in pursuance to general instructions of the State Superintendent of Schools, from two to six o'clock p. m., is a legal election.

5. ———: ———: **Administrative Interpretation.**  Section 10920, Revised Statutes 1909, requires the State Superintendent of Schools to cause to be distributed to school officers and authorities copies of the school laws, "with instructions for carrying such laws into execution," and long before the special election to vote bonds for the erection of a school building in a town district was held he had furnished a form of notice which fixed the opening hour for such an election at two o'clock p. m., and this instruction the school board followed. *Held,* that the Superintendent could not amend the statute, but an administrative construction of a doubtful statutory provision is entitled to weight, particularly after it has been acquiesced in by the Legislature for years and securities have been issued and bought and sold in dependence upon it; and a special election held for such purpose in pursuance to such instructions does not so conflict with the statute requiring that at the annual school election in town districts the polls shall be open from seven o'clock a. m. to six p. m., as to render it illegal.

## Mandamus.

WRIT MADE PEREMPTORY.

*S. S. Nowlin, W. C. Hughes, E. P. Rosenberger* and *Glover E. Dowell* for relators.

(1)  There is no statute providing for the time of holding special elections in city, town or consolidated school districts.  Sec. 10879, R. S. 1909, provides for the holding of annual elections in such districts and says the annual election shall begin at seven o'clock a. m. and close at six o'clock p. m., and this section further significantly provides that such elections shall be held in certain cities in conjunction with the municipal elections, and for that reason the law provides that the polls shall open and close at the annual elections at the same time provided for in the municipal elections. Sec. 10870, R. S. 1909, relates to elections involving the disorganization of town, city or consolidated school dis-

tricts, a matter which is certainly of as much importance as the issuance of bonds, and that section is absolutely silent as to when the voters shall have the right to vote. Apparently that section provides for a mass meeting to be held at the school house where the voters vote and go home. Sec. 10865, R. S. 1909, provides for the organization of common or consolidated school districts into town or city school districts, and it expressly provides that the proposition shall be voted on at an annual or special meeting, notice having been given as provided in Sec. 10844, R. S. 1909, which section is in the article applicable to common schools and provides for the meeting at two o'clock p. m. without fixing the time for the close. Again Section 3, Laws 1913, p. 721, provides for a meeting at two o'clock p. m. to vote on the organization of the district. (2) Sec. 10920, R. S. 1909, expressly makes it the duty of the State Superintendent to print in a separate volume and distribute for the use of school officers the school laws of the State with instructions for carrying such laws into execution. In obedience to such law, the State Superintendent has issued instructions for carrying such laws into effect. (3) Sec. 10777, R. S., 1909, relates to school-loan method of voting and sale of bonds, applicable to all classes of schools, it being the sole and only section in the statute providing for the issuance and sale of school bonds for building purposes, and it being the section under which the special bond election in question was held. This section is complete within itself, and while it specifically provides for the posting of the notices of election and the form of the ballot which must be used, saying that the propositions there referred to may be voted on at either annual or special elections, yet it in no way provides for the time of the elections. Therefore, clearly under that section, all the voters have a right to is a reasonable and fair opportunity to express their will by ballot without regard to the length of time the polls shall remain open. And further, the State Superintendent of Schools acting under Section 10920 has construed this Section 10777 by placing in the

school laws by him published in a separate volume and distributed among the school officers, immediately following said Section 10777, his form of notice of special school elections is set up, and in this form he provides that ·said election shall commence at two o'clock p. m. While the instructions of the State Superintendent of Schools are not binding on the courts, yet when such instructions are reasonable and practical they have great weight with the courts in determining the true meaning of the law. State ex rel. v. Job, 205 Mo. 1.

*Frank W. McAllister,* Attorney-General, and *C. P. Le Mire,* Assistant Attorney-General, for respondent.

(1) Respondent refused to register said bonds on the ground that since the notices of the special election stated that same was to be held for the purpose of voting bonds "for the erection of a school building," said school board had no authority to issue bonds or expend money derived from the sale thereof, for the erection of a high school. While we have been unable to discover a decision of our appellate courts involving this specific proposition, yet the remarks contained in the opinions rendered in the case of. Martin v. Bennett, 139 Mo. App. 237, and Horsfall v. School District, 143 Mo. App. 541, seem to indicate that before a school board such as here involved is authorized to issue bonds and expend money in the erection of a high school building, such proposition must be specifically submitted to the vote of the people by proper notice and an election held in compliance therewith. (2) Our statutes applicable to city school districts, such as are here involved, are silent as to the manner of conducting a special election called ·by the school board for the purpose of voting bonds to erect buildings, but it is by law provided that at the annual meeting of such districts the polls shall be kept open from seven o'clock a. m. until six o'clock p. m. It has generally been held that when a statute authorizes a municipal corporation to hold an election for the purpose of determining a given

question, and describes no mode for the conducting of such election, then such election shall be conducted in the manner prescribed by law for other elections by the same body. Thus, since the law providing for a regular annual meeting of such districts provides that the polls shall be open between the hours of seven o'clock a. m. and six o'clock, p. m., it would appear that likewise in special elections the polls should be kept open as aforesaid. It has been further held that where the hours for holding an election are prescribed by statute a slight deviation therefrom will not necessarily render such election void and the presumption will be that such deviation has not affected the result of said election, but, when the deviation from the legal hours is great or even considerable, the presumption will be that it has affected the result of the election and the burden will be upon him who seeks to uphold the election to prove affirmatively that it does not. McCrary on Election Laws, secs. 163, 164, 165; Penn. District Election, 68 Pa. St. 336; Shadwick v. Melvin, Bright's Election Cases, p. 251; Yates v. Martin, 1 Ells, 52.

BLAIR, J.—Pursuant to a special election held February 16, 1920, the directors of School District No. 39 of Montgomery County (Montgomery City School District) issued bonds to secure funds to be used in erecting a school building. The State Auditor has refused to register these bonds (Art. 8, chap. 15, R. S. 1909), and this is a proceeding by mandamus to compel him to do so.

Respondent has waived the issuance of the alternative writ and demurred to the petition therefor. This puts the cause at issue (State ex rel. v. Gordon, 238 Mo. 168) and the allegations demurred to stand admitted. [State ex rel. v. Reynolds, 256 Mo. 710.] In addition, the parties have filed an agreed statement of facts.

The school district in question is a town school district. The notice of election stated that the purpose, was "to authorize the school board to issue bonds to

the amount of $28,000 for the erection of a school build-
ing.'' The notice, among other things, fixed the voting
places and, following the order of the board, informed
the voters that the polls would open ''at two o'clock
p. m. and remain open until 6 o'clock p. m.'' The elec-
tion was held on the date named in the notice and the
polls were opened and closed at the hours fixed therein.
Three hundred and twenty-three votes were cast; two
hundred and thirty-seven for the loan, and eighty-six
against the loan. The bonds issued recited that they
were issued for the purpose of erecting a high school
building, and a contract for such a building was entered
into by relators.

Respondent raises two questions: (1) that since
the notice of election ''stated that same was to be held
for the purpose of voting bonds 'for the erection of a
school building,' said board had no authority to issue
bonds or expend money derived from the sale thereof,
for the erection of a high school;' '' and (2) that the
election was void because the ''polls were not kept open
from seven o'clock a. m. to six o'clock p. m.,'' but were
''kept open only from two o'clock p. m. until six o'clock
p. m. on the day on which the election was held.''

I. It is conceded that the authority of relators to
hold the election in question is found in Section 10777,
Revised Statutes 1909. The amendment of 1911 (Laws
of 1911, pp. 394, 395) does not affect any question in
this case. Section 10777, as amended, provides
that ''for the purpose of purchasing school house
sites, erecting school houses, library buildings
and furnishing the same, and building additions to or
repairing old buildings, the board of directors shall be
authorized to borrow money, and issue bonds for the
payment thereof, in the manner herein provided. . .
Notice of said election shall be given at least fifteen
days before the same shall be held, by at least five written
or printed notices, posted in five public places in the
school district where said election shall be held, and the

amount of the loan required, and for what purposes; it shall be the duty of the clerk to sign and post said notices. The qualified voters at said election shall vote by ballot. Those voting in favor of the loan shall have written or printed on their tickets, 'For the loan;' those voting against the loan, the words, 'Against the loan;' and if two-thirds of the votes cast shall be 'for the loan' the district board shall be vested with the power to borrow money, in the name of the district, to the amount and for the purpose specified in the notice aforesaid, subject to the restrictions of the following section. . . . ." The remainder of the section and the succeeding section are not relevant to the question in this case.

The authority of the district to vote bonds for school buildings is found in this section. The statute does not in terms distinguish between grade school buildings and high school buildings. The power given, so far as this case is concerned, is one to call an election to vote bonds for "erecting school houses." Even the section which authorizes the board of a town district to establish schools does not use the term high schools, but empowers such board to establish schools "in which studies not enumerated in Section 10941 may be pursued." It is clear the word "school houses" as it is used in Section 10777 includes buildings for use for any and all schools the board may or must establish, both grade schools and those "of a higher grade" than contemplated by Section 10941, i. e. such as are usually referred to as high schools. [Roach v. The Board, 77 Mo. 484; Carling v. Jersey City, 71 N. J. L. l. c. 158; American Asylum v. Phoenix Bank, 4 Conn. 172; Board of Education v. Hyatt, 152 Calif. l. c. 519.] All these schools are under the authority and control of the district board. The whole form a system which constitutes the common or public school or schools of the district. In Board of Education v. Welsh, 51 Kan. l. c. 806, 807, the Supreme Court of Kansas said:

"Under our liberal and beneficent system of common schools, we perceive no good reason why the higher branches prescribed by the board of education of the City of Topeka may not in its discretion be taught in the public schools, and no good reason why scholars desiring to be instructed in such branches may not be provided with a separate school building, properly furnished, whether it be called a public school, a graded school or a high school. The Legislature, within the terms of the constitution, has established a system of common schools. High schools are referred to as a part of the system. Under the provisions of Chapter 196, Laws 1891, if certain preliminary proceedings are taken by boards of education, the qualified electors may vote bonds for the purchase of school sites and the construction of school buildings. Whether the school buildings proposed to be constructed and voted for shall be called a graded school or a high school is immaterial, if, under the control of the board of education, it is carried on in accordance with the statute concerning common schools."

The purpose of the election involved here was to secure authority to issue bonds to obtain funds to erect a building designed, necessarily, to house some part of the schools of the district. The statutes do not, in terms, distinguish, in this connection between the schools of lower and higher grade with respect to elections for voting bonds for school houses. One is as much a school as the other, and a building for one is as much a school house as is a building for the other. The designation of the building as a high school building in the contract and in the bonds is not of such consequence as to afford just cause for respondent's refusal to register the bonds. The cases cited by respondent (Martin v. Bennett, 139 Mo. App. 237; Horsefall v. School District, 143 Mo. App. 541) decide nothing to the contrary.

II. It is insisted the polls should have been opened at seven o'clock a. m. and kept open until six o'clock

p. m. instead of from two o'clock p. m. to six o'clock p. m. They were opened and closed at the hour fixed by the order of the board and the notice of election. The position of respondent is that the board had no power to fix the hours it did and that, therefore, the election is void. It is stipulated that the number of qualified voters in the district was approximately four hundred; that only once in seven years had the number of votes cast exceeded the number cast in the election in question; that there was no congestion at the polls and that "the officers of said election could easily have accommodated twice the number of voters that actually voted." There is no contention that any voter was prevented from voting by reason of the hours fixed by the board or that the result was in any way affected. The statute (Sec. 10777, R. S. 1909) fixes no hours for opening and closing the polls at bond elections. Election by ballot is provided and the form of the ballot is prescribed. It is argued that since the hours are not prescribed, "then such election shall be conducted in the manner prescribed by law for other elections by the same body." [State ex rel. v. Hackmann, 218 S. W. l. c. 324.] If this principle be conceded to be applicable, the "other elections" provided by the statute become pertinent. At the annual election in town districts (Sec. 10879, R. S. 1909) it is provided that the polls shall be open from seven o'clock a. m. to six o'clock p. m. If this were the only provision for the elections in such district, the question presented would be easily solved, under the concession already made. It is not the only one. In Section 10870, Revised Statutes 1909, it is enacted that the election for disorganizing a town district shall be held at a meeting, after notice, and if two-thirds of the resident voters and taxpayers vote at such meeting for dissolution, the district stands dissolved. In the same article (Sec. 10865, R. S. 1909) the method of organizing city, town and consolidated school districts is provided. The voting is by ballot and it to be done at a meeting held for that pur-

*Hours of Election.*

pose, pursuant to notice. Respondent does not point out any reason for selecting one rather than another of these methods under the rule he invokes.

By Section 10920, Revised Statutes 1909, the State Superintendent of Schools is required to cause to be distributed to school officers and authorities, copies of the school laws, separately bound, "with instructions for carrying into execution of such laws." It is stipulated that in his instructions for carrying on an election under Section 10877, the State Superintendent had long before furnished a form of notice of election which fixed the opening hour at two o'clock p. m. This "instruction" relators followed in calling the election here involved, as many school boards, doubtless, had previously followed it in calling like elections. Of course, the State Superintendent cannot amend a statute, but an administrative construction of a doubtful statutory provision is entitled to weight, particularly after it has been acquiesced in by the Legislature for years and securities issued and bought and sold in dependence upon it. There is a reason for the provision that at annual elections the polls shall be kept open from seven a. m. to six p. m., which reason does not apply to bond elections called for special dates; i. e., such elections are held in conjunction with municipal elections at which the time during which the polls shall be open is fixed by other statutes. In the circumstances, there is no sound reason which compels a holding that the established practice which has long prevailed in pursuance of instructions authorized by the Legislature so conflicts with the law that the act of the relators in following it renders the election in this case void. The alternative writ is made peremptory. All concur.