STATE OF MISSOURI EX REL. M. F. BELL, RESPONDENT, v. E. C. HOLMAN ET AL., APPELLANTS.[*]

Kansas City Court of Appeals. July 6, 1926.

---

[*]Corpus Juris-Cyc. References: Mandamus, 38CJ, section 405, p. 767, n. 24; section 406, p. 767, n. 26; section 411, p. 770, n. 75.

*Baker & Baker* for respondent.

*McBaine & Clark* and *W. B. Whitlow* for appellant.

ARNOLD, J.—This is one of four mandamus suits instituted in the circuit court of Callaway county, Missouri, on January 7, 1923, against the county court of said county and the members thereof, seeking to compel said court to order warrants drawn in favor of the relators in each of said suits. The four suits were tried together in said circuit court on March 3, 1923, and judgment was awarded relator, or relators, in each case, and all four cases were appealed to the Supreme Court and by that court sent here, and are now before us for review. While all the cases involve the same general questions, there are some minor differences presented, and for that reason, it is deemed advisable to consider them separately.

The facts shown are that on November 5, 1918, the voters of Callaway county voted a half-mill tax for a bond issue to build a public hospital and to provide for the maintenance of the same; and that thereafter, at a special election on February 14, 1920, there was voted an additional half-mill for the same purpose; thereafter a board of trustees was appointed under the law, and the petitioner herein, as an architect, entered into a contract with said board for the construction and erection of a hospital. From time to time, as per the terms of said contract, upon the vouchers of said board of trustees, money was paid to petitioner as the work progressed, so that at the time the building was completed, there was due petitioner an unpaid balance in the sum of $887.63, and this sum is the basis of this action.

The board of trustees issued a voucher to petitioner for this amount which, on February 8, 1922, was filed in the county court of Callaway county and the court was requested to order a warrant drawn upon the hospital fund in the hands of the treasurer therefor. The county court refused to order the warrant drawn.

The petition in mandamus alleges the facts as above detailed and further alleges that there was sufficient money in the hospital fund to pay the voucher when filed; and that it became the duty of the county court to order a warrant drawn for the amount of said voucher in petitioner's favor.

The answer admits (1) that appellants were justices of the county court, (2) that the elections of November 5, 1919 and February 14, 1920, were properly held and that by the two elections a total of one-mill tax was voted for hospital purposes; (3) that the board of trustees for said hospital was duly appointed. Further the answer states that after the first election and the appointment of the board of

trustees, the county of Callaway issued bonds for the purchase of a hospital site and the erection of a hospital building in the sum of $75,000, and that the bonds were negotiated and the said amount of money obtained for the construction of said hospital; that after the second election and the voting of an additional half-mill tax, there were issued an additional $37,500 in bonds for the purchase of a hospital site and the construction of a hospital building; that there was available for said purpose the sum of $112,500, and that this was the only sum or fund which the hospital board had on hand which could legally be appropriated for the purchase of the ground and the erection of the hospital building.

The appellants further stated in their return that the board of trustees did not let the contract for the building, but undertook to erect the same by apportioning the work to be done among a number of contractors, and by employing a contractor to erect part of the building on a percentage basis; that the cost of so constructing the building far exceeded the amount of the funds available from the sale of the bonds and was in excess of the amount appropriated for the construction of said building; and that the employment of relator by reason thereof was unauthorized and illegal and that the voucher issued by the trustees in favor of relator was null and void.

It is further alleged that the board of trustees, prior to employing relator and entering privately into a contract with him for the construction of part of said hospital building, failed to advertise for bids twice in succession; that under the law, the board was not authorized to employ relator privately until said board had twice advertised successively for bids in the manner prescribed by law; that under the law, the board could only employ one firm, or individual contractor for the construction and completion of said building; that by reason of not letting the construction of the building by contract, the respondent was not entitled to any commission on the money expended; that relator had not been legally appointed superintendent of construction of the said building in that he had not taken an oath or affirmation to discharge impartially the duties imposed upon him by law.

Relator's reply to the return pleads, among other things, estoppel of appellants to object to the issuance of the warrant herein because the members of the county court had agreed to the method of construction adopted by the board of trustees.

Upon the pleadings thus made the cause was tried, resulting, as stated, in a judgment for relator, Bell.

The evidence discloses that on March 27, 1920, a contract was entered into between the said board of trustees and relator and the firm of Ball & Neal (by Tom Ball) whereby said firm agreed to provide all material and labor for the heating plant system and plumbing entering into the proposed hospital. The evidence shows that on

534

April 14, 1919, the board of trustees entered into a contract with Holmes & Flynn of Illinois and M. F. Bell (relator herein) of Fulton, Missouri, as architects to prepare plans and specifications for the building; to audit the bills and issue certificates for the payment of money to the contractors as the same became due; and for their compensation it was agreed that the architects were to be paid six per cent of the total cost of the building, three per cent of which was to be paid when contracts were awarded and the remainder on completion of the building. It seems to have been the understanding that two-fifths of this compensation was to be paid relator Bell and three-fifths to Holmes & Flynn, but the contract does not so specify. However, payments were made in this ratio upon vouchers issued by the hospital board. It is in evidence that the architects thus selected never took an oath of affirmation as required by law. Holmes and Flynn and relator Bell prepared the plans and specifications which were approved by the board of trustees.

It appears bids for the hospital building were advertised separately for the construction of the building, for heating and plumbing, for electric wiring and fixtures, and for the elevator. On August 20, 1919, the board of trustees met with Mr. Bell the architect and opened the bids. It was found that the total amount of the low bids for the various parts of the work exceeded the amount of the bond issue available for the construction of the building. It appears in evidence that on September 13, 1919, the board of trustees further considered the question of constructing the hospital, and it was decided that it would require $37,500 in addition to the $75,000 of bonds already issued to construct and equip the hospital. The result was the holding of the second election and voting of the additional $37,500 as above stated.

In the meantime the board entered into private contracts for some of the material. The record shows that on October 29, 1919, brick was purchased from the Alton Brick Company, without advertising for bids; that on March 23, 1920, the board purchased metal laths for the construction of the building amounting to $6087. It also appears that on May 6, 1920, Judge David H. Harris who was chairman of the board of trustees presented to the board written contracts made by him on behalf of the board with one W. R. Odor for superintending the construction of the building, and with the firm of Ball & Neal for the heating and plumbing system, which contract was approved by the board and thereupon Ball & Neal were paid $2641.91 on account. At the same time W. R. Odor, contractor or superintendent, and M. F. Bell, architect, were authorized to secure bids for the necessary hardware and to take action in the matter. On the same day the board entered into a contract with the Huttig Mill Works of Kansas City to furnish the mill work for $10,121.40. At the same meeting W. R. Odor reported that the order for the common brick necessary had been placed with the Moberly Brick Company and that the order

for tile had been placed. On the same day the wiring contract was let to Sam D. Ellis for $3550 and his bond fixed at $1000.

Judge Harris who, as stated, was chairman of the board at this time, testified that on account of war conditions bids could not be obtained for the construction of the hospital; thât the people of the county wanted the hospital built, and that he discussed with the county court the proposition of erecting the building; suggested that some responsible man be employed as superintendent and that the board should pay for the work weekly as it progressed; that the contract for that part of the building requiring special technical knowledge should be left to persons engaged in that particular line of work, and that all other work should be done by the board. It was agreed that this policy should be pursued and that the county treasurer should pay for the weekly pay roll and every month present the same to the county court, which, it was agreed, would order a warrant drawn therefor. Pursuant to this arrangement, Mr. Odor was employed to superintend the construction of the building, and the board proceeded along the lines indicated. Judge Harris further testified that bids were not advertised for twice and that, as he construed the law, such advertising was not necessary.

By agreement of counsel the report of an audit of the accounts of the hospital board made by McTaggart & Company, accountants of Kansas City, Missouri, was received in evidence: This audit disclosed that from March 12, 1919, to June 11, 1921, the total receipts were $118,952.30, and of this amount $3705.56 consisted of donations of citizens paid to the county treasurer and afterwards returned to the board to be expended for purposes of the donations, and not to be used for the purpose of constructing the building. The audit showed that on June 11, 1920, all of the available funds to the credit of the board for the construction of the building had been expended in its construction. On that date the unpaid accounts were as follows: Ball & Neal, $3395.88; Sam D. Ellis $499.99; W. D. Odor $504.42; Holmes & Flynn $2152.68. Part of the Holmes & Flynn account was due M. F. Bell.

In this situation the board of trustees issued trade acceptances to pay these various sums, payable after the first of the coming year in the total amount of $6,448.56. On January 31, 1922, relator Bell was given a voucher for $887.63, signed by the president and secretary of the board of trustees for the amount of the trade acceptance given prior thereto with accrued interest, and purports to be in settlement thereof. The county court refused to issue a warrant drawn for the payment of said voucher and this suit in mandamus was instituted to compel the county court to issue the warrant. The same thing was done in the other three cases which we shall consider separately, as above stated. The court found the issues for relator and entered the following judgment:

"The court doth further find that the relator is a competent architect; that the Callaway county hospital and its board of trustees are duly organized and existing under the provisions of Article 27 of Chapter 111 of Revised Statutes of Missouri for the year 1919; that such board of trustees, while duly organized and existing under the provisions of the law aforesaid, by order of record, entered into a contract in writing with relator as assistant architect to furnish plans and specifications for, and to superintend the erection of a hospital building; that the relator performed all the obligations imposed upon him by said contract, and that his services were satisfactory to said board of trustees; that from time to time, under said contract, payments were made to relator on said contract; that on February 7, 1922, the said board of trustees, by order of record, directed that a voucher be issued to relator in the sum of eight hundred eighty-seven and 63/100 dollars ($887.63) in settlement of the balance due relator on his said contract. Which voucher was properly issued, delivered to and accepted by the relator; that said voucher was properly authenticated by the officers of said board of trustees and filed in the county court of Callaway county, Missouri, on February 8, 1922, and on said date a demand was made that a warrant be ordered drawn in favor of the relator for the sum so certified in said voucher; that the respondents, E. C. Holman, James E. Moore and A. T. Crump were then and are now the duly elected, qualified and acting justices of the county court of Callaway county, Missouri; that repeatedly since the 8th day of February, 1922, relator has demanded of respondents that a warrant be ordered drawn in his favor for the amount of said voucher; that the respondents continuously since said date, and do now refuse to order said warrant issued.

"The court doth further find that the relator is entitled to have a warrant drawn in his favor against the hospital fund of said county for the sum of $887.63, and it is the duty of the respondents to order said warrant drawn; that there are sufficient funds in the hands of the treasurer of Callaway county, Missouri, to the credit of the hospital fund to pay said sum, together with all other unpaid vouchers."

A motion for a new trial was overruled and the cause is before us on appeal.

It is urged in support of this appeal that the appointment of M. F. Bell and Holmes & Flynn was illegal for the reason that the board of trustees failed to comply with the provisions of the statute governing the appointment of a superintendent of construction or erection of a county public building. This charge refers to the general statute governing the erection of public buildings. Section 12616, Revised Statutes 1919 provides:

"No hospital building shall be erected or constructed until the plans and specifications have been made therefor and adopted by the board

of hospital trustees, and bids advertised for according to law for other public buildings.''

The general statute applying to the erection of public buildings (sec. 9456, R. S. 1919) provides the county court may erect public buildings in the manner therein provided, if there are sufficient funds for such purpose, not otherwise appropriated, and they shall make an order for the erection of the building and shall appoint some suitable person to superintend the erection thereof. And section 9464 provides that the superintendent thus selected shall prepare and submit to the county court plans and specifications of the building to be erected.

It is insisted that the provisions of these sections were not followed. It is also charged that the method adopted by the board of trustees for the erection of the hospital building was illegal in that bids were not advertised for and the contract let for the construction of the building, in the manner required by Article 27, Chapter 111, Revised Statutes 1919, sections 12609 and 12626, inclusive.

It is pointed out that under the provisions of section 12612, the board of hospital trustees ''shall have control of the expenditure of all moneys collected to the credit of the hospital fund and of the purchase of site or sites, the purchase or construction of any hospital building or buildings, and of the supervision, care and custody of the grounds, rooms or buildings purchased, constructed, leased or set apart for that purpose; *provided,* that all moneys received for such hospital shall be deposited in the treasury of the county to the credit of the hospital fund, and paid out only upon warrants ordered drawn by the county court of said county upon the properly authenticated vouchers of the hospital board.'' It is urged that under the provisions of this section while the control of the funds, expenditure of the same and the management of the hospital is vested in the board of trustees, yet the duty is imposed upon the county court to see that the vouchers issued by the board for payment of money out of the hospital fund is made in lawful manner and the county court, to that extent, exercises control over the hospital fund.

It is relator's position that as the members of the board of trustees of a county hospital are elected by the people, just as the members of the county court are elected, their official acts are not subject to the control of the county court. [Secs. 12611, 12612, 12619, 12620 and 12625, R. S. 1919.] Appellants make no charge that the members of the board of trustees were not properly elected and qualified and consequently this point is not before us for determination. Section 12612 provides for the qualifications and defines the powers of the board of trustees. Among other things, it is provided that the county treasurer shall be the treasurer of the board of trustees; that he shall receive and pay out all money under the control of said board as it orders; that is to say that the treasurer shall pay out money upon warrants drawn by the board. Section 12610 provides that the county

court shall levy the tax authorized by the vote of the people which shall be collected in the same manner as other taxes are collected and credited to the hospital fund and "shall be paid out on the order of the hospital trustees for the purposes authorized by this article and for no other purpose whatever."

It is relator's contention that under the provisions of the statutes just cited, the duties of the county court therein mentioned are purely ministerial; and that any attempt to extend its authority beyond that of issuing warrants in payment of the vouchers issued by the board of trustees is unwarranted. Appellants take the contrary view and it is upon the proper solution of this question the determination of this appeal hinges.

In this connection, it may be well to note that section 12614, Revised Statutes 1919 provides for the bond issue, and that the hospital trustees shall determine the amount thereof. It would seem to be plain from a reading of the section that it gives no such authority to the county court and that the court has no discretion in ordering vouchers issued, or in supervising the issuance thereof, but that it is required to issue warrants as called for by properly authenticated vouchers of the hospital trustees if there is sufficient money in the hospital fund to meet the same.

The general rule applicable to this situation is found in 26 Cyc., p. 315, as follows:

"If an officer is authorized or required to examine and approve a claim, if in his judgment it is just and proper, his power is judicial and mandamus will not lie to compel approval; but if his duty simply consists in certifying or signing an allowed claim, it is ministerial, especially where there is no other remedy. So where an officer has refused to countersign a warrant upon reasons outside of his discretion, or where he claims a discretion as to the certification of the claim where no discretion exists, he may be compelled by mandamus to act; but there must be a specific legal right. An officer may be compelled to number and record a claim as required by the statute."

In the old case of Boone v. Todd, 3 Mo. 140, the court said:

"Where the county court refuses to draw their warrant on the treasurer of the county directing him to pay an account which has been allowed by the circuit clerk to the clerk of the court for office rent, a mandamus is an appropriate remedy to compel them to do so."

To the same effect, also, is the case of State v. Brown, 72 Mo. App. 651, where the court held that the auditor of the city of St. Louis was without power or authority to inquire into the correctness of a settlement of the accounts of the sheriff of St. Louis county by the circuit court in general term; that his sole duty was to issue the warrant for the amount shown to be due by the settlement. The analogy between those cases and the one at bar is obvious. As a general rule

a disbursing officer cannot pass upon the legality of a claim where it has been allowed by a board or other officer having authority to act in the premises, except in the case of fraud or mistake. [26 Cyc. 318.] [See, also, State ex rel. v. Meeker, 182 Ind. 240, 105 N. E. 906; City of Paducah v. Board, 146 Ky. 636, 143 S. W. 1; Lovelady v. Loveman, 191 Ala. 96, 68 So. 48; Jobe v. Caldwell & Drake, 93 Ark. 503, 125 S. W. 423.] In the case last cited, it is said:

"The state auditor acts in a ministerial capacity in issuing warrants on certificates of an officer or tribunal authorized to pass on and certify the justness of claims against the state and may be compelled by mandamus to act when he wrongfully refuses to do so."

To the same effect is the case of Special Road Dist. v. Burton, 266 Mo. 711, 182 S. W. 746. In the case of State ex rel. v. Mason, 153 Mo. 23, 54 S. W. 524, it is said:

"The general rule is that when a claim has been allowed by the board or officer charged by law with the duty of passing on its validity or amount, it then becomes the duty of the auditor to audit the same and draw his warrant on the disbursing officer."

As we view the law and the facts presented herein, we must conclude that the duty of the county court was purely ministerial; and it was the duty of the county court to issue the warrant upon the voucher of the board of trustees as presented. We find nothing convincing to the contrary in the citations of appellants.

It is urged that the board was without legal right to erect the hospital building by piecemeal, or to contract with different contractors for piecemeal construction; that the board of trustees having paid out money for the construction of the hospital contrary to law, relator cannot collect commission under their contract upon the money thus illegally spent; that the board had expended and paid out the full amount of money appropriated and set aside for the construction of the hospital building prior to the issuance of the voucher to relator, and there were no funds available against which the county court could have ordered the warrant drawn; that in no event is relator entitled to a warrant for a sum of money including interest on the trade acceptances.

These points are all covered by our ruling to the effect that the duties of the county court with respect to the hospital fund were merely ministerial, and limited to the issuance of warrants for the various vouchers, valid on their faces, issued by the board of trustees for the hospital. As to the point that there were no funds against which the warrants could properly be drawn at the time, it may be observed that this appears to be the reason for the issuance of the trade acceptance upon which the interest was allowed. However, the court found there were ample funds to cover the warrants at the time the writ was sought and issued. Under our holdings herein, the ruling of the trial court in this respect was not error.

540

We find no reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.