STATE OF MISSOURI at the Relation of R. NEWTON McDOWELL, INC., a Corporation, Relator, v. FORREST SMITH, State Auditor of Missouri.—67 S. W. (2d) 50.

Court en Banc, December 22, 1933.

*Blatchford Downing* and *McCune, Caldwell & Downing* for relator.

*Roy McKittrick,* Attorney-General, *Edward C. Crow, James L. HornBostel* and *Harry G. Waltner, Jr.,* Assistant Attorney-General, for respondent.

HAYS, J.—This is an original proceeding in mandamus to compel the respondent, as State Auditor, to issue a warrant on the State Treasurer in payment for certain materials furnished by the relator to the State Highway Commission for use by the latter in the construction of a supplementary state highway.

Upon the filing of the relator's application for our alternative writ the respondent entered his appearance, waived the issuance of the writ and filed his motion to dismiss the proceeding. This motion is essentially a demurrer and admits all well-pleaded facts set out in the application and raises thereon only questions of law for determination.

The essential facts alleged in the application are these: The purchase from the relator by the State Highway Commission (hereinafter called the commission), for the contract price of $4,182, of specified quantities of crushed rock, constituting material for use in the construction of a certain road in Johnson County, running from Holden to Pittsfield and being a part of the supplementary system of the State Highway System provided for by Section 44a, Article IV of the Constitution of the State, the same being an amendment to the State Constitution adopted November 6, 1928; the proceedings with reference to advertising for bids; the submission of relator's bid, which was found to be the lowest and best bid and was duly accepted; the delivery of the material by relator and its acceptance by the commission. Relator duly presented to respondent, with request that he audit and approve and draw warrant on the State Treasurer in payment of relator's claim, the bill of particulars and voucher evidencing the details of the claim, duly certified by the officer or employee designated by the commission for that purpose as required by Section 8118, Revised Statutes 1929; and the voucher and bill of particulars so certified and approved by the officials of the commission were attached to the application herein. Respondent has refused and declined to do so and has given as his sole reason or ground for such refusal the fact that said purchase was not made by or pursuant to the directions of the State Purchasing Agent, George C. Johnson, or pursuant to the provisions of the act creating the office of purchasing agent and prescribing the duties of the incumbent thereof. [Laws 1933, pp. 410-414.] There were and are ample funds available in the state road fund, duly appropriated for such road construction purposes for the present biennial period by the Fifty-seventh General Assembly and derived from the proceeds of the sale of state highway bonds, the issuance and sale of which was provided for by said constitutional amendment, and from the proceeds of the collection of registration fees and license taxes on motor vehicles and taxes on the sale and use of motor vehicle fuels in excess of the amounts required for other purposes under the terms of said constitutional amendment. The application further avers that relator is without adequate remedy in the premises save by writ of mandamus, which relator prays may be issued and made peremptory.

The respondent's motion to dismiss challenges the court's jurisdiction to grant the relief sought by mandamus, upon various grounds which will be noted later on.

The existing statutory provisions pertaining to the commission derive from two amendments, known as Section 44a of Article IV, made to the State Constitution by adoption at the general elections of 1920 and 1928, respectively. The Amendment of 1920, authorized the raising of sixty millions of dollars by bond issue to provide funds

for the construction of a state highway system. The Legislature in 1921 (Laws 1921, 1st Ex. Sess., pp. 131-167) created the State Highway Commission as an agency of the State to construct said highway system. In 1928 said Section 44a as previously adopted was amended by the adoption of a new Section 44a, designed primarily to authorize the raising of an additional $75,000,000 or a total of $135,-000,000, for the completion of the road system theretofore begun but then uncompleted and for the extention and the supplementing thereof, and secondarily to enlarge the powers of the commission. Thereafter the statutory plan and provisions as enacted in 1921 in relation to said commission and said highway system were with slight intervening amendments carried forward by the Revision of 1929 and now appear as Article 12, Chapter 42 of the Revised Statutes of 1929, said article comprising Sections 8092 to 8139 inclusive.

Said constitutional Amendment of 1928 provided, among other things: That the issuance of said bonds, from time to time, shall be determined by the State Highway Commission (par. 2). That the proceeds of said bond sale shall be expended under the direction and supervision of the State Highway Commission . . . to locate, establish, acquire, construct and maintain, as in said amendment provided, supplementary state highways and bridges . . . and to acquire material therefor (par. 3); and any balance of funds in the bond sinking fund in any one year derived from motor vehicle registration fees and taxes and motor vehicle taxes in excess of the next year's requirements shall be transferred and delivered to the state road fund to be administered in like manner, and for such other purposes and contingencies relating and appertaining to the construction and maintenance of state highways and bridges as the State Highway Commission may deem proper (par. 4); and after all said bonds shall have been paid all said motor vehicle registration fees, etc., shall go into the state road fund, to be administered and expended under the direction and supervision of the State Highway Commission for the purpose and in the manner hereinabove set out (par. 5). The amendment at the close provides that "the General Assembly shall enact such laws as may be necessary to carry into effect this amendment."

Certain of the statutes (R. S. 1929), carrying the constitutional amendment into effect, will next be noted. Section 8104 provides that the commission shall (1) have supervision of the state highway system; (8) prepare plans, specifications and estimates for all state highways; (9) *let all contracts for the construction or improvement of state highways;* (11) have power to construct under its own direction and supervision all roads, culverts and bridges or part thereof as provided in said article.

By other statutes the commission is granted divers incidental powers, such as to purchase, lease or condemn land in the name of the State (Sec. 8111); to convey lands or leaseholds (Sec. 8112); to

*publish, in the county where the work is to be done, notices of such work; to receive and pass upon bids; to prescribe the contracts and bonds to be entered into* by the lowest responsible bidder, and power to reject excessive bids and *construct all such* roads and bridges or any part (Sec. 8116), such *contracts to be entered into with the commission in the name of the State (Sec. 8119)*; to make all final decisions affecting the work provided for and all rules necessary for the proper management and conduct of said work; to *purchase, lease or otherwise acquire and supply any tools, machinery, supplies, materials and labor needed for said work, and pay* for engineering, preparation of plans and specifications, *cost of advertising,* engineering, supervision and inspection, and all expenses and contingencies *in connection with the construction and maintenance of such highway system* (Sec. 8115).

Section 8104 (Subdiv. 10) requires the commission to *prescribe a system of auditing and accounting* as nearly uniform as practicable for all road and bridge moneys for the use of all highway officials.

By Section 8114 the commission is required to make detailed *report* annually *to the Governor and* biennially *to the Legislature* of the expenditures and work of the state highway department for the preceding annual and biennial periods, respectively. In like manner the engineer is required to make monthly reports to the commission. Also *the Governor may cause the books and accounts of the commission to be audited* by the State Auditor or otherwise at any time.

The *commission* was created and *"vested with* the powers and duties specified in this article, and also *all powers necessary or proper to enable the commission* or any of its officers and employees, *to carry out fully and effectively all of the purposes of this article"* (Sec. 8094). It was required to appoint a competent chief engineer and such other employees as it deemed necessary (Sec. 8096), also a secretary and clerks (Sec. 8097) as well as legal advisers (Sec. 8098).

*The commission shall pay* the State's proportion of cost of roads constructed with Federal and State funds out of state road funds. such funds to be paid by "the State Treasurer on requisition drawn by an officer of the . . . commission on a warrant of the State Auditor" (Sec. 8106). And *"all payment for work done, or obligations incurred* under the provisions of this article, shall be made by the State Treasurer, out of the state road fund, upon warrants drawn by the State Auditor, based *upon bills of particulars and vouchers certified by the officer or employee designated by the commission"* (Sec. 8118). Also the cost of repairing and maintaining the state highways. Such costs shall be paid out of the state road fund on the warrant of the State Auditor when such payment shall be ordered by the commission. [Sec. 8134.]

Such were the constitutional and statutory provisions governing the State Highway Commission in its relation to the state highway

system at the time the act pertaining to the state purchasing agent became effective.

So far as it is material here this Purchasing Agent Act (Laws 1933, pp. 410-414) substantially provides that the purchasing agent shall purchase *"all supplies* except printing, binding and paper, as provided for in Chapter 115, Revised Statutes 1929, for all departments of the State, except as in this act otherwise provided." All purchases are to be based on competitive bids. On purchases estimated at $2000 or over the *purchasing agent shall advertise for bids in at least two daily newspapers* and also solicit bids by mail, but on smaller estimated purchases the bids may be secured without advertising. *He may reject bids* and advertise anew, *or,* with the approval of the Governor, *purchase the required supplies,* if at better price, *on the market. Bids are to be based on standard specifications,* provided such have been *prepared by such agent. No department is permitted to make any purchase except as in the act provided.* Nor shall said agent furnish any supplies to any department without first securing a certification from the auditor that a sufficient balance remains in the fund from which payment is to be made. *By November 1 of each year each department shall submit to said agent a classified list of all its needs for supplies for the ensuing year.* Said *agent shall make and adopt rules for the purchase of supplies;* classify the requirements of the state government for supplies; *adopt certain standards as to qualities, sizes and variety of supplies,* and *promulgate and enforce* written specifications of such *standards,* after consultation in the preparation thereof with a committee appointed by the Governor and consisting of one representative from each the highway department, the educational institutions, the penal and corrective institutions, the eleemosynary institutions, and two representatives from other departments. *Each department shall make reports of supplies on hand, or which may be needed, as said agent may direct, and all reports, bids specifications* and *contracts* and all *records of purchases* and sales *of any kind shall be kept in the office of said agent* and be open to inspection by the public. The act, in Section 10, specifically provides that "whenever any department or agency of the state government shall purchase or contract for any *supplies, materials* or contractual services contrary to the provisions of the Act or the rules and regulations made thereunder, such order or contract shall be void," the head of such department or agency shall be personally liable therefor. The term "supplies" is defined in the act to mean *"supplies, materials,* equipment, contractual services and any and all things or articles, except as in the Act otherwise provided. . . . The term 'department' as used in this Act shall be deemed to mean department, office, board, commission, bureau, institution, or other agency of the State." The closing section thereof states, "All acts or parts of acts inconsistent or in conflict with this Act are hereby

repealed to the extent of such inconsistency or conflict.'' (All italics hereinabove are ours.)

The demurrer tenders as a question of fact (and in this respect is a ''speaking demurrer'') that the facts of the claim are not correct, and the auditor has the right to determine that matter. This question is foreclosed, as a demurrer to the return to the alternative writ of mandamus, or to the application for the writ, admits all facts well pleaded in the return or the application, as the case may be. [State ex rel. Meals v. Hackmann, 217 S. W. 271; State ex rel. Muns v. Hackmann, 283 Mo. 469, 223 S. W. 575.] Accordingly we take the fact to be, as alleged in the application, that the respondent based his refusal solely upon the ground that the provisions of the State Purchasing Agent Act rendered the claim void and not upon any incorrectness or other infirmity of the claim or its certification.

As to the suggestion that an action is available to the relator under Section 10 of the State Purchasing Agent Act, it is sufficient to say that the suggestion begs the question which is the fundamental and decisive one in this proceeding. And this observation applies equally to respondent's contention that the law does not authorize the payment of said claim.

The demurrer raises also the issue that on the facts pleaded in the application the relator has adequate remedies at law, viz., (a) by an action under Section 8102 of the Revised Statutes, and (b) by an appeal under Section 11422 from the auditor's rejection of the claim to the General Assembly.

It is true that Section 8102 provides that the commission is suable by its official name. Also it was decided by this court in State ex rel. Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418, that under Laws of 1921, First Extra Session, page 131, Section 28, now Section 8119, Revised Statutes 1929, the commission is a legal entity created by the State, with all the powers and obligations of a corporation, for the purpose of carrying out a public enterprise and suable on the contracts it might make in that enterprise. Yet it would seem that it cannot be successfully contended that a judgment, if recovered in such an action brought on the claim here in question, would be determinative and binding except as between the commission and the claimant, or that the same would be collectible on execution. Would not the claim, if and as so merged in such judgment, still have to go through much the same course of certification to the auditor (not a party to the judgment) with request upon him to draw his warrant upon the State Treasurer for payment thereof out of the selfsame state road fund; and could not the auditor refuse to honor the requisition for the same reason he refused to honor the claim itself on its original presentation? We think that result is fairly inferable, since the state highway fund,

arising from taxes levied by the State, belongs to the State and cannot be paid out except in pursuance of an appropriation law (State ex rel. Publishing Co. v. Hackmann, 314 Mo. 33, 47, 52, 282 S. W. 1007, citing Const. of Mo., Sec. 19, Art. 10; C. R. I. & P. Railroad Co. v. Commission, 315 Mo. 1108, 287 S. W. 621; and since all obligations incurred by the commission are expressly required by statute (Sec. 8118, supra). to be paid by the State Treasurer, out of the state highway fund, upon warrants drawn by the State Auditor upon certification by the proper employee of the commission. For these reasons, among others, we think this roundabout, incomplete statutory remedy, though available, is inadequate to meet relator's situation.

Said appeal statute, Section 11422, provides substantially that if a claimant be dissatisfied with the decision of the auditor on any claim, the auditor shall, at the claimant's request, certify his decision, with his reason therefor, to the General Assembly. In support of the adequacy of this suggested statutory remedy the respondent cites and relies upon State ex rel. Daily v. Thompson, Auditor, 41 Mo. 14, and State ex rel. Gehner v. Thompson, Auditor, 316 Mo. 1169, 293 S. W. 391. The first of these was a mandamus to allow a criminal-cost bill which had been disallowed in part by the auditor. The alternative writ averred the certification by the circuit judge and the prosecuting attorney of the bill of the fact that the services set out therein were rendered and that compensation for the same was given by law, and the writ contained no other averment relative to the bill or the reasons which induced the auditor's action. The court held the certification to be a judicial determination of the correctness of the claim and that such certification, if it stood alone, would be sufficient to conclude the auditor from any further investigation of the facts, but rested its decision in denying the writ on the ground that the claim was not one of those *"expressly required by law to be audited and settled by other officers or persons"* within the meaning of what is now Section 11404. The court said in part: "Whenever, therefore, it is intended that a claim against the State shall be audited by a different person or officer, so as to take away the general powers and responsibility from the Auditor, it must be made to appear by the plain and express provisions of a legal enactment." With reference to the auditor's certifying a refused claim to the General Assembly, the court said: "This . . . is the way pointed out by the statute, *and which he* (claimant) *may pursue or not at his pleasure. It is, however, not the only remedy, for a party may still resort to the courts to compel the Auditor to allow the claim and draw a warrant therefor, if it can be shown to be such as the laws of the State will authorize the payment of.*" (Italics ours.)

In the Gehner case, supra, the facts were, briefly, these: Gehner, assessor of the city of St. Louis, brought an original proceeding in

mandamus to compel the State Auditor to audit and approve for payment a claim against the State for statutory fees alleged to have been earned by claimant in the making of the state income tax books of the city for a certain year. The auditor had rejected the claim on the assigned ground that Gehner's predecessor in office had earned the fees for the period, that his claim therefor had been duly audited and allowed by the auditor. Division Number One, on evidence heard by its commissioner, denied the peremptory writ. The decision was based upon what is now Section 11404, which requires the auditor, as the general accountant of the State, to "audit, adjust and settle all claims against the State payable out of the treasury, except only such claims as may be expressly required by law to be . . . settled by other officers or persons," etc.; and upon what are now Sections 11416 and 11418. The first of which provides that claims against the State shall be exhibited within two years, with the evidence in support thereof to the auditor to be audited, settled and allowed; and the second authorizes the auditor in his discretion to take evidence on the settlement of any account. The principle of law applied was that the allowance of the relator's claim against the State involved the exercise of a quasi-judicial discretion upon respondent's part; which, unless exercised arbitrarily and wholly without legal reason, or in abuse of discretion, cannot be controlled by mandamus. And while the appeal statute, supra, was adverted to it was not held to be preclusive of mandamus. It seems clear enough that the appeal under discussion is not adopted to the situation before us. As indicated hereinabove, the auditor did not base his refusal upon any matter of fact involved in his decision, but rested the same entirely on a question of law. Manifestly the decision of this seeming conflict between statutes could not appropriately be determined by the legislative branch of our State government.

The general rule regarding control by mandamus of the exercise of judicial or quasi-judicial discretion by courts and executive state officers, was in the Gehner case, supra, applied to the facts. In so applying the general rule and in specifically noting one exception thereto (adverted to supra) recognition was given, by the following expression on page 1187 (316 Mo.), to an additional exception which under our previous decisions and in our opinion governs this phase of the proceeding now at bar: "Relator, in our opinion, has not clearly established by his proof herein that he has a clear legal right to the relief he seeks through the discretionary writ. . . . There may be cases, such as State ex rel. v. Walker, 97 Mo. 162, and State ex rel. v. Wilder, 196 Mo. l. c. 429 (cited by relator), wherein the uncontroverted or admitted facts made it appear to be the imperative duty of the State Auditor to audit and settle a claimant's account, and wherein this court has granted the aid of our peremptory writ of mandamus for the reason that it conclusively appeared from rela-

tor's proof, or from the admissions of respondent, that relator has a clear, unequivocal and positive right to the relief sought. Such facts, in our opinion, do not appear in the instant proceeding.'' The court having entertained jurisdiction and proceeded to judgment, this decision did not determine that mandamus was not a proper remedy, but that the facts in judgment would not authorize a peremptory writ.

In this State a right of a claimant to compel the auditor by mandamus to draw his warrant for a duly certified account rejected by him was recognized at an early day; this court saying: ''Should the auditor refuse to allow a just account, the creditor of the State must resort to some judicial tribunal having jurisdiction of the subject matter. . . . I well recollect that a mandamus issued to the auditor, and that the court re-examined the account (refused by the auditor) assisted by the advice of the Attorney-General, and in all respects treated the matter as an appeal from the decision of the auditor.'' [State v. Hinkson, 7 Mo. 353.]

In the subsequent case of Morgan v. Buffington, 21 Mo. 549, an original proceeding in mandamus and involving a mixed question of law and fact as to whether a member of the Legislature was entitled to pay during a period over which the Assembly had recessed, the court proceeded to a decision on the merits. In the later case of State ex rel. McMurtry v. Thompson, Auditor, 37 Mo. 176, involving a similar question to that in the Buffington case, of mixed law and fact, the court likewise entertained jurisdiction and proceeded to judgment; so also with respect to State ex rel. Daily v. Thompson, Auditor, 41 Mo. 14, examined hereinabove.

State ex rel. McGrath v. Walker, 97 Mo. 162, 10 S. W. 473, referred to the Giehner case, supra, was an original proceeding in mandamus instituted by a member of the State Board of Equalization to compel the auditor to draw a warrant for services rendered by the relator as such member. The point in controversy and in judgment was as to whether the pertinent statutes authorized the drawing of the warrant. A peremptory writ was awarded.

State ex rel. Suter v. Wilder, State Auditor, 196 Mo. 418, 95 S. W. 396, supra (wherein the writer hereof was of counsel), was a parallel case to the Daily case. It reviewed all the earlier cases noted above, save the McGrath case, and drew the conclusion (l. c. 429) that ''The auditor is subject to the supervision of the Supreme Court, and if he refuses to audit, adjust and settle costs which have been properly taxed and certified by the judge and prosecuting attorney, the court will not hesitate by its process to compel him to perform his duty in that regard.'' The court then proceeded with the determination of the case on its merits.

In mandamus, original in this court, brought to compel the auditor to register certain bonds, this court en banc said: ''The respondent first urges that it is his duty under the law to see that the conditions

of the applicable statutes have been complied with before he should register bonds. This is his duty, but if he errs in his judgment as to whether or not the facts show compliance, his act in refusing to register is reviewable here upon mandamus. So runs a long list of cases in mandamus against our several State Auditors." [State ex rel. v. Hackmann, 287 Mo. 156, 165, 229 S. W. 1082.] It appears that the acts such as those noted above call for the exercise of a quasi-judicial discretion upon the part of the auditor. [See, also, State ex rel. Nolen v. Hackmann, 276 Mo. 173, 207 S. W. 494.]

It is contended for respondent that relator must show a clear legal right to the relief he asks for, else mandamus cannot issue. If by this is meant that such clear right must be shown in the application for the preliminary writ—*in limine,* as it were—we cannot accede to the contention. The rule in this respect applies "not to the right as made to appear upon the petition and return at the commencement of the proceedings, but as such right is made to appear upon the full and final hearing of the case." [2 Bailey on Habeas Corpus and Special Remedies, p. 804.]

The relator insists that, since on this record the correctness of the claim is not in issue, the mere drawing of a warrant by the auditor for payment is a ministerial act. This, because the commission has exclusive control of the expenditure of the state road fund, and where a claim has been approved and voucher for the amount thereof issued by the commission it is the duty of the auditor to draw his warrant therefor. [We are cited to said Section 8118; State ex rel. Bell v. Holman, 222 Mo. App. 531, 293 S. W. 93 (State ex rel. Holman v. Trimble, 316 Mo. 1041, 293 S. W. 98, same case on certiorari); State ex rel. v. Kansas City, 319 Mo. 386, 4 S. W. (2d) 427; State ex rel. Lunatic Asylum v. State Auditor, 46 Mo. 326, and other cases.]

The first or Holman case was in mandamus brought by a board of trustees of a county hospital to compel the county court to draw a warrant on the hospital fund for payment of the claim as theretofore approved and voucher issued by the board for the amount thereof. The county court's duty in the premises was held to be ministerial, in view of a special statute which prescribed that said fund "*shall be paid out on the order of the hospital trustees for the purposes authorized by this article.* . . ." and, in view of another statute which declared that the county treasurer shall pay out "*all money under the control of the board as ordered by it.*"

The Lunatic Aslyum case, supra, was of the same nature as the Holman case. It was brought against the State Auditor and ruled upon a special act. This act (Laws 1870, p. 10) appropriated specified sums "subject to the warrant of the board of managers of State Lunatic Asylum, to be used and expended by said managers for the following purposes (here follow the several items and the sums to be expended therefor respectively); and the State Auditor is hereby

required to draw his warrant for the sums of money appropriated, on the requistition of said managers.''

These cases are fairly typical of the others cited in this connection. The statutes imposing the duty on the disbursing officers plainly appear to be express and specific. In this respect, as may readily be seen by comparison, they are essentially different from the statute relating to the commission, viz., Section 8118, epitomized hereinabove. This section declares that payment ''shall be made by the State Treasurer . . . upon warrants drawn by the State Auditor, based upon bills of particulars and vouchers certified by the officer or employee designated by the commission;'' not ''as ordered by it,'' nor as appropriated in specified sums for specified articles or objects. It follows that the claim in suit comes, as did those in the Wilder case and its predecessors, within the general statute (Sec. 11404), which applies to all claims payable out of the State Treasury, save only those ''expressly required by law to be audited and settled by other officers or persons.'' This view finds further support in a provision found in Section 8134, which, in contrast with Section 8118, tersely and expressly declares: ''The cost of repairing and maintaining said roads shall be paid out of the state road fund on the warrant of the State Auditor, *when such payment shall be ordered by the commission.*''

We come now to the decisive question in the case: With reference to the purchase, and matters connected therewith and incidental thereto, of road material by the commission for use in the construction of state highways, which law prevails as between the State Purchasing Agent Act and what we shall term the Highway Act, if and so far as they may be found to be in conflict? The duty of the court to reconcile and harmonize these statutes, as far as may be, is fully recognized; and endeavor, looking to that end, will be made to do so. In such endeavor a fundamental rule of statutory interpretation requires that if any provision of our Constitution may be concerned in the premises, we give that interpretation of the statutes which will harmonize the statutory provisions with the Constitution. [State ex rel. Hawes v. Mason, 153 Mo. 23, 49, 54 S. W. 524.] We should be mindful, too, of the legislative purpose in the enactment of the legislation with a view to effectuate the same. These general rules are our guide, and to them other rules that may be invoked are subsidiary aids.

Before considering the Purchasing Agent Act and the legislative intent, in respect of it and of the Highway Act in their enactment, let us from the epitome given above examine briefly the pertinent provisions of the previously enacted Highway Act and of the constitutional provisions which this act was designed to carry out, and next the Purchasing Agent Act.

From the constitutional amendment it is perfectly clear, not only that the raising and expenditure of the money for the construction

and maintenance of all roads and state highway systems was placed largely in the discretion and under the supervision of the commission, but that the power to acquire material for construction of the supplementary roads is likewise express and clear. The Legislature is required to enact such laws as may be necessary to carry the amendment into effect. These provisions constitute conditions of the constitutional grant of the powers therein conferred upon the General Assembly and limitations thereon. [State ex rel. Highway Commission v. Thompson, 323 Mo. 742, 19 S. W. (2d) 642.] Pursuant to such grant the Legislature enacted the State Highway Act. This legislation was both detailed and comprehensive. It created the Commission as a legal entity, with all the powers and obligations of a corporation (Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418) not sovereign, but an agency of the State—for the purpose of carrying out a stupendous public enterprise; involving the expenditure of an enormous amount of money, to be raised by bond sales, special tax and license fees; requiring on the part of the personnel of the commission a broad experience, executive and managerial ability and judgment of a high order; requiring also subordinate officers—of highly technical and specialized knowledge and skill—and employees of various qualifications for the classes of office and field work to be done,—making of the whole a department, as it is called, with its many subdivisions, including an audit department, of coordinated work and results. Also it appears that the Highway Act, passed of necessity for the specific purpose of carrying out the constitutional mandate, makes of the legal entity, the commission, with its subordinates a self-sufficient, integrated and well-nigh autonomous agency and confers upon it untrammelled power to supervise and control the construction, and to purchase materials used in the construction, of state highways as provided in said act. and to control all matters incident thereto and connected therewith,—such as plans. specifications, contracts for construction or improvement, or materials therefor; the advertising for bids, passing on the bids, the execution of contracts with the successful bidders, and so forth. All of these powers are conferred in detail and are again included collectively in a section of the act (Sec. 8094) which declares that the commission as created is "vested with the powers and duties specified in this article, and also all powers necessary or proper to enable the commission, or any of its officers or employees, to carry out fully and effectively all of the purposes of this article." In respect of road construction and its connected incidents nothing is omitted. The act is a special law; a complete, well-rounded harmonious whole, relating to a single homogeneous enterprise that was designed by the people and furthered by the Legislature to "get Missouri out of the mud." Notwithstanding this well-designed, practical and complete scheme, with its checks and balances. in the form of audit supplemented with reports required to be made to the Governor and to the

Legislature, did the General Assembly intend or undertake by the Purchasing Agent Act to interfere with and supplant that scheme in the matter of purchases of road material for highway construction, by requiring such purchases, and their incidents, to conform to and be governed by this later act, which is a general statute? To this question, the last to be determined, we now address ourselves.

The Purchasing Agent Act discloses on its face that it was intended to apply to some extent to the State Highway Commission, as the commission is specifically mentioned in the provision which requires that one of its members in conjunction with representatives of other designated departments and institutions act with the state purchasing agent in the adoption and promulgation of certain standards relative to supplies. Also, the commission is referred to by necessary implication elsewhere in the act. Granting that, we are in this proceeding concerned with only the effect of the act with respect to its operation *vel non* upon the purchases by the commission of materials for use in road construction, as only such are involved in the claim in suit.

■ We apply, then, first the fundamental rules of statutory construction referred to supra, in ascertaining the legislative intent. In such inquiry it is to be postulated that the Legislature was in passing the later act seeking, just as in obedience to the constitutional mandate it sought to do in the enactment of the Highway Act, to observe the intent of the mandate with respect to the control by the commission of its purchases, together with the incidents thereof, of road material and to aid, not hinder, the carrying out of that intent. The mandatory power conferred by the constitutional amendment is plenary in respect of the commission's power to purchase road construction material for the purposes stated therein. The grant conferring this power contains no delegation to the Legislature, or authority for legislative delegation, of that power or any part of it to any other state officer or agent. Results of the application of the State Purchasing Agent Act, upon the commission's purchases of road construction materials, such, among others, as the duplication of work and of records to be kept, which would ensue in both the highway department and in such agent's department will be passed. It need only be noted that the negotiation of a purchase by advertisement for bids and the acceptance of the bid and the entering accordingly into a contract in writing are parts of the transaction and together constitute the purchase; and that the commission cannot be shorn of any part of its plenary discretion and power in the premises. Said Purchasing Agent Act not only purports to apply to supplies, but defines that term to mean "supplies, materials, equipment," etc., and is in seeming conflict, in respect of materials, with said Highway Act and also, if construed to include materials purchased for highway construction, would impinge on said constitutional amendment—a result which should not be regarded as according with the legislative

intent. In such situation subsidiary rules of statutory construction need be invoked.

Bearing in mind the matters postulated and the conclusions drawn in the paragraph next preceding, and endeavoring to restrict the operative effect of the later statute no farther than necessary to a correct determination of this proceeding, we now state applicable and controlling subsidiary rules of interpretation:

"It is the established rule of construction that the law does not favor repeal by implication but that where there are two or more provisions relating to the same subject matter they must, if possible, be construed so as to maintain the integrity of both. It is also a rule that where two statutes treat of the same subject matter, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although later in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject matter as far as coming wihin its particular provisions." [1 Lewis-Sutherland Stat. Const. (2 Ed.), sec. 274, pp. 537-539. See, also, State ex rel. Rutledge v. School Board, 131 Mo. 505, 516, 33 S. W. 3; Manker v. Faulhaber, 94 Mo. 430, 440, 6 S. W. 372.]

"In many of the cases just cited (under the passage quoted, supra) there was a general repeal of all inconsistent acts and parts of acts. As a general rule the insertion of this general repealing clause does not add anything to the effect of the general act to repeal local or special laws." [Lewis-Sutherland, supra, p. 529.]

The same text states in Section 275: "The general law can have full effect beyond the scope of the special law, and by allowing the latter to operate according to its special aim, the two acts can stand together. Unless there is a plain indication of an intent that the general shall repeal the other, it will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly." [See, also, 25 R. C. L., secs. 169, 170; State ex rel. Kellogg v. Bishop, Treasurer, 41 Mo. 16-25.]

In view of these considerations and the established rules of construction to which reference has been made, it seems altogether clear that the purchase represented by the claim in suit does not come within the operative effect of the State Purchasing Agent Act aforesaid, and that the relator herein was and is, under the controlling law, entitled to the warrant sought at the hands of the respondent.

Let our peremptory writ of mandamus be issued. All concur.