M’Girk, C. J.
delivered the opinion of the Court.
During the territorial government of Missouri, Bent, as Auditor of the then district of St. Louis, recovered a judgment against Conner, in pursuance of the law then in force respecting the collection of public money, and defaulters in paying over the same, together with twenty per cent, on the amount recovered, given by law.
The Legislature, in 1814, released Conner from' the twenty per cent. The State Legislature released Conner, by act of the General Assembly, from the judgment entirely. This judgment was obtained by Bent, for the use of the district of St. Louis, for moneys of said district collected, or pretended to have been collected, from the people of said ¿'strict, as district taxes.
Conner enjoined the judgment in Chancery, before the passage of the last act mentioned, and then on the passage of said last act, filed his supplemental bill, stating his release as aforesaid. The Chancellor dismissed this bill, and dissolved the injunction ; from which decree Conner appealed to this Court.
The first question is, could the Territorial Legislature release the judgment for the twenty per cent? and secondly, could the State Legislature release the judgment entirely ? . ■
The power of the Territorial Legislature depends on the act of Congress of 1812, \ commonly called the organic law, which creates a General Assembly in the Territory . of Missouri; by which act-a general power is given to make all laws for the good government of the people, not inconsistent with the laws and Constitution of the United States. Upon this.power, however, there are special restrictions; hut the 4 power of releasing is not among them.
Then the question as to both acts comes to one point: had 'the Legislature power to pass these acts ? It is objected that these acts of the Legislature are no laws ; and to prove this, Btaciestone’s definition of law is given, which is that municipal law is a rule of civil conduct, prescribed by the supreme power in a State, commanding what is right and prohibiting what is wrong. Much stress is laid on the words municipal law, and it is insisted, according to 1st Bl. Com. 44, that this statute releasing Conner is not a law, hut a sentence, because the force of it is spent on one individual. Mr. Blackstone says, in the same page, that the general law of England 5á so called, in compliance with common speech, and that the word mmiicipmm strictly denotes the particular customs of one single free town.
It is contended by the appellee’s counsel, that this act is no law, because the whole operation is spent on one individual. If the law-making power is to be con *170 fined to the point only of making general laws, it would cut off one branch of useful legislation; no legislative relief could be granted to any person where the public is concerned on one side and an individual on the other. If the doctrine of the appellee’s counsel is correct, no new county can be made, for that act would not pervade the whole community: no law could bo made to authorize the building a jail or court house, for the same reason.
To lay taxes, is a legitimate exercise of representative legislation; this money, when collected, is the money of the government. The Legislature may appropriate to particular purposes, may change the destination at pleasure, at any time before it jjassed from its possession. And again, suppose A. undertakes to build a house for the use of a county, and his bargain, owing to things unknown to both sides, is unreasonably hard, here the law will not help him; Chancery cannot assist him; cannot the Legislature do him justice by an act for his relief? It is conceived there is nothing in the genius of our government which forbids it.
The principle on which this sort of legislation depends, appears to he that the whole community, for the purposes-of government, constitute one party, and each individual another, on whom the government is to operate.
The communit}' acts by its representatives. It acts in its executive affairs by its chief magistrate and inferior executive officers. It exerts its judgment by its judiciary. Its law-making power is exercised by its General Assembly. The Legislature hold the public purse-string, and as to the public funds, the Legislature is the trustee j and if it misapplies the money, it is answerable to the people. It will hardly he denied, that the Legislature cannot apply public money when once collected, to such purpose as they think fit, even if it should give it away entirely by an act. This would only be an abuse of delegated power. Now; if it can give it away at pleasure, or give too much for too little value, when the money is collected, why can it not give the money away before collected, or stop it in transitu. The representatives of the people must be entrusted with this power, otherwise the machinery of government would sink under its own weight.
It is conceived, the circumstance of this being county money, and only collected from a portion of the people, makes no difference; each county has its share of representation, and it is no objection to say, all the representation of the particular county might have voted against the releasing act, and so the release taken place contrary to their consent. The whole of the counties form hut one community ; the whole of their representatives form hut one Legislature, and in that the majority must govern. On this ground, we think the authority of the Legislature may safely repose. The acts of the Legislature are then opposed, on the ground, that this judgment is a contract, and that to release the judgment is impairing the obligation of contracts. This is a very technical argument; but suppose the case to be so, what will be the consequence ? To every contract there must he parties: now who are the parties here? Conner is one party — is the county another? It wóuld seem not. All the county ever did was passive or compulsory. By compulsion it paid the taxes. Connor is said not to have accounted for them, and it is not to be supposed, when a person paid lax to Conner, that he impliedly promised to the person he would pay it over, as the law directed. But if any promise existed at all, it must have been to the authority that authorized and required him to do the act; and that authority was the Legislature, which had the sovereign control of these matters, and, as a party, *171 might release the judgment. Two cases are cited from the Supreme Court of the United States, to prove this judgment was a contract with the county; and Conner; and also, that the county had a vested right therein, and that the Legislature could not divest it. The first is the case of Terret et al. v. Taylor et al. By this case, it appears, there existed a religious corporation, and that they purchased land, &c.; that the Legislature of Virginia passed an act, authorizing the overseers of the poor to sell these lands, and to apply the proceeds to other purposes than church purposes. The Supreme Court decide, this cannot he done. This decision is, on that point, unquestionably right; for hero the right was a private right, and could not he divested by a public act, without the consent of the owners. The Court, in this case, examine the authority of the Legislature over private corporations, and say, with respect to public corporations, which exist only for public purposes, such as counties, towns, cities, &c., the Legislature may, under proper limitations, have a right to change, modify, enlarge or restrain them; securing, however, the property for the use of those at whose expense it was originally purchased. With respect to this case, it is to be remarked, that the question was, whether the Legislature could taire away and dispose of the property of a corporation, acquired by their private funds; and the question with respect to the power of tire Legislature over county property is only mentioned incidentally; and if the Court meant, the Legislature could not release a judgment against an individual, in favor of a county, we cannot subscribe to it. When a law authorizes county taxes to be levied and collected, and directs a county Court what to do therewith, it cannot he said, the money has vested irrevocably in the county, but must be subject to the superior control of the Legislature.
The other case cited to sustain the position of the appellee, is the case of Dartmouth College, 4 Wheaton’s Reports. This was a corporation endowed by a private person, and chartered by the power of the British crown; the property vested in the Trustees, not for the purpose of State or National Government, hut to promote education. The Legislature of New Hampshire, within whose jurisdiction it was located, by an act attempted to change the charier in many particulars, and to vest the funds in other hands. The Court held this could not be done, because it impaired the obligation of contracts and divested corporate rights ■; and the Court, in the commencement of their opinion, say, it has been argued, that the word contract,' in its broadest sense, would comprehend the political relation between the government and its citizens; would extend to offices held within a State for State purposes, and to many of the laws concerning civil institutions, which must change with circumstances, and he modified by ordinary legislation, which deeply concern the public, and which, to preserve good government, the public judgment must control, &c.; and that the clause in the Constitution, (respecting the obligation of contracts,) would prohibit these laws. Taken in its broad, unlimited sense, the clause would he an unprofitable and vexatious interference with the internal concerns of State ; would unnecessarily and unwisely embarrass its legislation, and render immutable those civil institutions which are established for the purposes of internal government, and which, to subserve those purposes, ought to vary with varying circumstances.
Here, it seems to the Court, that the State Legislature might abolish and create counties at pleasure; and we cannot see how this act of the General Assembly impairs the obligation of any contract: for the Legislature have power over the counties, and all things that belong to them in that capacity simply as such.
*172 Upon the whole question, we are of opinion, the Chancellor erred in dismissing the supplemental bill, which sought a perpetual injunction.
The decree of the Chancellor is reversed, and a perpetual injunction awarded, and the appellant ordered to pay the costs in the courts of law and equity, till the time of filing of his aforesaid supplemental bill j, and that each party pay his own costs subsequent to filing said bill..