THE STATE EX REL. E. C. HOLMAN ET AL., Justices of County Court of Callaway County, v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals, Nos. 27507 to 27510.—293 S. W. 98.

*Court en Banc, April 8, 1927.*

1. **COUNTY HOSPITAL: Warrant by Board: Approval of County Court.** Under the statutes (Secs. 12609 to 12626, R. S. 1919) the board of trustees of a county hospital have exclusive control of the expenditure of money collected into the county treasury to the credit of the hospital fund, and when a claim has been approved and a voucher for the amount is issued by the board it is the duty of the county court to order a warrant drawn upon the designated hospital fund. The only judgment to be exercised by the county court is to determine whether the voucher presented shows proper authentication by the hospital board, and whether the voucher is for a purpose within the control of the board and for a purpose mentioned in said statutes.

2. ———: **Buildings: Piecemeal Contracts: Advertisement: Decision of Court of Appeals.** It cannot be ruled on certiorari to a court of appeals that its decision that the statute (Sec. 12616, R. S. 1919), providing that bids for the erection of a county hospital shall be advertised in accordance with the law relating to other county buildings, permits piecemeal contracts, to be entered into by the board upon a single bid, and that such decision conflicts with prior decisions of this court, where there is no case of this court construing said statute or a statute similar to the hospital statutes, which give to the hospital board exclusive control of the hospital funds and construction of hospital buildings.

3. ———: **New Statute: Construction by Court of Appeals: Certiorari.** The statute being a new one and the decision of the Court of Appeals being the first one construing it, and the question being an open and pertinent one, it will not be ruled that that court was without jurisdiction or that its decision contravened a previous decision of this court.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 511, p. 1079, n. 42. Mandamus, 38 C. J., Section 406, p. 767, n. 26; Section 411, p. 770, n. 74.

316 Mo.—66.

*Certiorari.*

WRIT QUASHED.

*W. B. Whitlow* and *McBaine & Clark* for relators.

(1)   The method adopted by the board of trustees of the Callaway County Hospital for the erection of the hospital building was illegal, for the reason that bids were not advertised for and contracts let for the construction of the building in the manner required by law.   Secs. 12609-12626, 9465-6, R. S. 1919; Wolcott v. Lawrence County, 26 Mo. 272; Floyd County v. Allen, 27 L. R. A. (N. S.) 1125; Art. 4, sec 48, Mo. Constitution; Hillside Securities Co. v. Minter,. 300 Mo. 380.   (2)   The law requires that the board of hospital trustees of a county hospital enter into only one contract for the construction of a hospital building, and the board had no authority to erect the building by piecemeal or contract with different contractors for piecemeal construction.   Secs. 9465, 9466, R. S. 1919. (3)   The appointment of M. F. Bell and Holmes & Flynn, as architects, to supervise the construction of the hospital building, was illegal for the reason that they never complied with the provisions of the statute governing the selection and appointment of a superintendent of construction or erection of a county public building.   Sec. 9456, R. S. 1919.   (4)   The Court of Appeals in holding that the writs of mandamus should issue against the county court, in view of the facts found by the court, that the hospital was not erected in the manner required by law, and that the provisions of the statutes governing the construction of public buildings were not complied with, failed to follow the controlling decisions of the Supreme Court of Missouri.   Hanick v. Marion County, 278 S. W. 730; Hillside Securities Co. v. Minter, 300 Mo. 380.   (5)   Mandamus cannot be invoked to compel a ministerial officer to act unless the relator has a clear legal right to require the performance of the act demanded, and even though the county court judges have only a ministerial duty to perform in the issuance of county hospital warrants they cannot be compelled to recognize the illegal acts of the hospital board. Sec. 12610, R. S. 1919; Hanick v. Marion Co., 278 S. W. 730; Hillside Securities Co. v. Minter, 300 Mo. 380; State ex rel. v. Hudson, 226 Mo. 239; State ex rel. v. Stone, 269 Mo. 334; State ex rel. v. Allen, 180 Mo. 27.   (6)   Mandamus cannot be invoked to compel an officer to become a party to an illegal transaction against his will, and if the contractors did not have the legal right to collect the money claimed by them the county court cannot be compelled to recognize their illegal claims.   Kitchen v. Greenabaum, 61 Mo. 110; Haggerty v. Ice Co., 143 Mo. 238; O'Bannon v. Wydick, 281 Mo. 478; State ex rel. Ins. Co. v. Cox, 306 Mo. 537; State ex rel. v. White, 282 S. W. 147.

*Cave & Cuthbertson* and *Baker & Baker* for respondents.

(1) The sole question for determination in this court is, Is the judgment of the Court of Appeals in conflict with the decisions of this court? If no such conflict exists such judgment must stand, whether right or wrong. State ex rel. Am. Press v. Allen, 256 S. W. 1049. (2) When this court has not construed a statute or a contract on writ of *certiorari* it will not criticise the construction placed by a court of appeals on such contract or statute. State ex rel. Ins. Co. v. Allen, 267 S. W. 379. (3) The Court of Appeals defined the powers and duties of county courts and hospital boards under the provisions of Art. 27, chap. 111, R. S. 1919. This article, and especially Sec. 12612, R. S. 1919, has never been construed by this court. Where no construction has ever been placed by this court upon the statute it cannot be said that the construction placed thereon by a court of appeals is subject to review by this court on writ of *certiorari*. State ex rel. Ins. Co. v. Allen, 267 S. W. 379. (4) The funds raised by levying the tax authorized for hospital purposes under Art. 27, Chap. 111, R. S. 1919, are under the exclusive control of the board of trustees of the hospital. Secs. 12610, 12612, R. S. 1919. (5) The provisions of Art. 3, Chap. 86, R. S. 1919, so far as they relate to the erection of county buildings, have no application to the erection of a hospital, except that the advertisement for bids must be in the same form and published in the same manner. And it then had authority to proceed with the work of building the hospital. Sec. 12616, R. S. 1919. (6) The amount of bonds issued does not limit or determine the amount which may be expended for the site and building. Within certain prescribed limits the amount of bonds to be issued is left to the discretion of the board of trustees of the hospital. Sec. 12614, R. S. 1919. (7) The issuance of a warrant upon a claim which has been properly audited and allowed is usually regarded as a merely ministerial duty which may be enforced by mandamus. 26 Cyc. 266, 267, sec. 10; p. 307, sec. D; p. 315; Boone v. Todd, 3 Mo. 140; State ex rel. v. Brown, 72 Mo. App. 651. (8) A disbursing officer cannot pass upon the legality of a claim where it has been allowed by the board or another officer having authority to act in the premises, except in the case of fraud or mistake. 26 Cyc., 318, sec. D; 10 A. L. R. 181; State v. Meeker, 182 Ind. 240; Paducah v. Bd. of Education, 146 Ky. 636; Lovelady v. Loveman, 191 Ala. 96; Jobe v. Caldwell & Drake, 93 Ark. 503; Commonwealth v. Tice, 116 Atl. 313; State ex rel. Moberly Road Dist. v. Burton, 266 Mo. 711; State ex rel. v. Mason, 153 Mo. 23. (9) Where one is entitled to have a county

warrant issued to him, his remedy is by mandamus to compel the issuance of the warrant. Steffen v. Long, 165 Mo. App. 254.

WHITE, J.—In each of these four cases the relators seek to quash the record of the Kansas City Court of Appeals in affirming a judgment of the Circuit Court of Callaway County. Each case arose out of the same transaction and the same record applies to each. Each represents a claim against the county hospital funds of Callaway County, for work and labor performed in the erection of the county hospital, and other services in that connection.

The trustees of Callaway County hospital, February 8, 1922, issued a voucher to M. F. Bell for the sum of $887.63, and the County Court of Callaway County was requested to draw a warrant upon the County Treasurer in favor of Bell, for that sum. The county court refused to issue such warrant, and Bell filed a petition for mandamus in the Circuit Court of Callaway County, asking a peremptory writ to compel the said county court to issue it. The circuit court found for relator in that proceeding and awarded the peremptory writ. The judges of the county court thereupon appealed to the Kansas City Court of Appeals, where the judgment of the trial court was affirmed. That is case No. 27507.

Morris J. Holmes, and others, having a claim for the sum of $1332.11, pressed such claim in the same manner throughout, with the same result. That is case No. 27508.

J. P. Dreps, and others, had claim for $516.41, which went through the same course. That is case No. 27509.

Thomas W. Ball and others presented claim for $3500.58, in which the same proceedings were had. That is case No. 27510.

The Kansas City Court of Appeals in the Bell case wrote an opinion considering the issues at length. In each of the other cases the court filed a memorandum following the ruling in the Bell case. A determination of the issues in the Bell case determines them all.

The opinion of the Court of Appeals sets out at length the facts in relation to the establishment of a county hospital under Article 27, Chapter 111, Revised Statutes 1919. No question is raised as to the regularity of the proceeding by which the county hospital was established and bonds voted for the erection of the hospital. Trustees were properly elected, and were in charge of the hospital and its property. On August 20, 1919, the hospital trustees met with Mr. Bell, the architect, and opened bids for the construction of the hospital. The county had already voted a one-half mill tax. Bonds had already been regularly issued in the sum of $75,000 for building the hospital. It was found that the bids for the entire work exceeded the amount of the bonds, and another election was had and an addi-

tional half-mill tax was voted, and $37,500 in bonds were issued, making a total of $112,500 available for building the hospital.

It is claimed by relators that the trustees had no right to advertise for bids until *all* the funds were available. The contract for the work was then let to the lowest bidders for the different parts of the work—piecemeal contracts. Some material was purchased by the trustees without advertising for bids. All this, it is claimed, was contrary to the statute, and, relators claim, the hospital trustees had no right to issue vouchers for claims against the building fund; the county court had authority to investigate and determine whether the vouchers were thus properly issued, and having determined that the contracts were not let according to law there was no authority for issuing warrants in payment of the claims. Relators assert that the Kansas City Court of Appeals in affirming the judgment of the trial court went contrary to certain decisions of this court which will be noticed below.

On the other hand, the respondents claim there was no illegality in the letting of the contracts and the performance of the work, and that the trustee properly issued the vouchers of the several claimants, including Bell. It is asserted further by respondent that the hospital trustees under the statutes had full control and discretion to determine the justice or validity of claim against the hospital fund, and the county court had no function or duty to discharge in that respect; that their duty was only ministerial, and, the claimants having an undoubted right to the warrants which they demanded, it was the duty of the county court to issue the warrants on the proper vouchers of the hospital trustees.

It may be said here that there is no dispute but that the labor, material and services out of which these claims arose were actually furnished and used in the hospital, nor is it denied that the work was done as well and as cheaply as it could have been procured from any other source. It is not disputed that the claimants furnished value for what they demanded.

The Court of Appeals held squarely that the function of the county court in respect to the claims was purely ministerial, that it had no duty to perform and no discretion in determining whether the claims were proper, or whether the contracts out of which they arose were in accordance with the statute.

The evidence shows that M. F. Bell, relator, and Holmes & Flynn, of Illinois, entered into contract with the board of trustees to prepare plans and specifications for the hospital building, and perform other duties in connection with it. They were to receive six per cent of the total cost of the building for such services, and there remained due a balance of $887.63, which is the basis of their demand. The finding and judgment of the circuit court as set out in the opinion of the Court of Appeals, are as follows:

"The court doth further find that the relator is a competent archi-tect; that the Callaway County Hospital and its board of trustees are duly organized and existing under the provisions of Article 27 of Chapter 111 of Revised Statutes of Missouri for the year 1919; that such board of trustees while duly organized and existing under the provisions of the law aforesaid, by order of record entered into a contract in writing with relator as assistant architect to furnish plans and specifications for and to superintend the erection of a hos-pital building; that the relator performed all the obligations im-posed upon him by said contract, and that his services were satisfac-tory to said board of trustees; that from time to time, under said contract, payments were made to relator on said contract; that on February 7th, 1922, the said board of trustees by order of record, directed that a voucher be issued to relator in the sum of $887.63 in settlement of the balance due relator on his contract, which voucher was properly issued, delivered to and accepted by the relator; that said voucher was properly authenticated by the officers of said board of trustees and filed in the County Court of Callaway County, Mis-souri, on February 8, 1922, and on said date a demand was made that a warrant be ordered drawn in favor of the relator for the sum so certified in said voucher; that the respondents, E. C. Hol-man, James E. Moore and A. T. Crump were then and are now the duly elected, qualified and acting justices of the County Court of Callaway County, Missouri; that repeatedly since the 8th day of February, 1922, relator has demanded of respondents that a warrant be ordered drawn in his favor for the amount of said voucher; that the respondents continuously since that date and do now refuse to order said warrant issued.

"The court doth further find that the relator is entitled to have a warrant drawn in his favor against the hospital fund of said coun-ty for the sum of $887.63, and it is the duty of the respondents to order said warrant drawn; that there are sufficient funds in the hands of the treasurer of Callaway County, Missouri, to the credit of the hospital fund, to pay said sum, together with all other unpaid vouchers."

I.   The Court of Appeals in its opinion says:

"It is relators' (meaning the petitioners for mandamus in the cir-cuit court) position that as members of the Board of Trustees of the County Hospital are elected by the people, just as **Statutory Con-struction.** the members of the county court are elected, their official acts are not subject to the control of the county court."

The court then announced the law which it says governs the case, as follows:

"As a general rule a disbursing officer cannot pass upon the legality of a claim where it has been allowed by a board or other officer having authority to act in the premises, except in the case of fraud or mistake. [26 Cyc. 318.] See also State ex rel. v. Meeker, 182 Ind. 240, 105 N. E. 906; City of Paducah v. Board, 146 Ky. 636, 143 S. W. 1; Lovelady v. Loveman, 191 Ala. 96, 68 So. 48; Jobe v. Caldwell & Drake, 93 Ark. 503, 125 S. W. 423. In the case last cited it is said.:

"'The State Auditor acts in a ministerial capacity in issuing warrants on certificates of an officer or tribunal authorized to pass on and certify the justness of claims against the State, and may be compelled by mandamus to act when he wrongfully refuses to do so.'"

It is for us to say whether that statement of the law in construing the statute is contrary to the latest ruling of this court. Let us notice first what the statute says about it.

Article 27, Chapter 111, Sections 12609 to 12626, Revised Statutes 1919, after providing for an election to levy a tax for the building and maintenance of a hospital, Section 12610 has this provision relating to the tax: "It shall be collected in the same manner as other taxes are collected and credited to the 'hospital fund,' and *shall be paid out on the order of the hospital trustees for the purposes authorized by this article, and for no other purposes whatever.*"

Section 12612, providing for an organization of the hospital board, further provides: "The county treasurer of the county in which such hospital is located shall be treasurer of the board of trustees. The treasurer shall receive and pay out *all the moneys under the control of the board, as ordered by it,* but shall receive no compensation from such board."

The section then provides that trustees shall receive no compensation; that they shall adopt by-laws, rules and regulations for their own guidance. "They shall have *exclusive control* of the expenditures of all moneys collected to the credit of the hospital fund, and of the purchase of a site or sites, the purchase or construction of any hospital building or buildings," etc. And then.: "*Provided,* that all moneys received by such hospital shall be deposited in the treasury of the county to the credit of the hospital fund, and *paid out only upon warrants ordered drawn by the county court of said county upon the properly authenticated vouchers of the hospital board.*"

The Court of Appeals construed these statutes to mean that hospital trustees have exclusive control of the expenditure of moneys collected to the credit of the hospital fund. The natural interpretation of that language excludes the intervention of any other official in determining what claims are to be paid and what accounts ought to be allowed. The plain words mean that full discretion is vested in the hospital board to pass upon and determine the validity of every claim presented. Relators call attention to the provision that the

money must be deposited in the treasury of the county and must be paid out only upon warrants drawn by the county court, and argue that the county court is thus vested with some discretion, some function to determine whether or not the claims presented are valid, but that same sentence of the statute goes on to say that such payments are made upon *properly authenticated vouchers of the hospital board*. That seems to leave no doubt that the only judgment exercised by the county court is determined whether the vouchers presented show proper authentication of the hospital board, and whether they are for purposes within control of the hospital board and for the purposes of the above statute. If such vouchers should show on their faces that they were issued for purposes foreign to the field controlled by the hospital board, the county court could deny warrants. The quotation from the Arkansas case cited by the Court of Appeals is in accordance with the ruling of this court. [County of Boone v. Todd, 3 Mo. 140.] That was a case where the circuit court allowed the clerk of that court a certain compensation for office rent. The clerk presented his claim as allowed by the circuit court, and the county court was asked that a warrant be drawn. The county court refused to issue the warrant and by mandamus was compelled to issue it. This court said:

"It may be true that if the county is bound by the law to furnish a room or house to keep the office in that an action would well lie against the county as the law has provided for suing the county; but it is equally clear that the circuit court is by express statute to audit all expenses against the county, incurred for books, stationery and other expenses relating to the office of its clerk. And with respect to these matters, when allowed by the circuit court, the county court is bound by law to issue their warrant to the treasurer of the county directing him to pay the same; and if the county court refuses to order the warrant to be issued, mandamus is beyond doubt the proper remedy."

Here all funds are to be paid out by the county treasurer *"as ordered by it"* (the hospital board), and the county court must issue the warrants upon its properly authenticated vouchers.

In State ex rel. v. Brown, 72 Mo. App. 651, the Sheriff of the City of St. Louis was allowed per diem compensation for himself and his deputies. His accounts were duly examined by the judges of the several divisions of the circuit court, and certified to be correct. The Auditor of the City of St. Louis examined the accounts and disallowed a considerable portion of them, whereupon by writ of mandamus he was compelled to pay the sums certified to be correct by the circuit judges. Judge BIGGS, in a concurring opinion, said (l. c. 657): "But the statute imposes the duty on the relator to attend the court, and it provides for his compensation therefor. The ju-

risdiction to determine the extent of his services and the amount to which he is entitled is vested in the judges of the circuit court in general term. In the discharge of these duties the circuit judges must construe and apply the statute and hear evidence as to the justice of the claim. As to these matters they exercise a lawful jurisdiction, and their decision thereon is final and conclusive.''

See also State ex rel. v. Gilbert, 163 Mo. App. 679, 1. c. 687; 3S C. J. 767; L. R. A. 1916 D, pp. 325-330, where in the notes many cases are collated on the subject.

The cases which relators cite as in conflict with the ruling of the county court are such as Hillside Securities Co. v. Minter, 300 Mo. 380; Hanick v. Marion County, 278 S. W. 730, all relating to the

**Certiorari.** regularity of entering contracts for county purposes under statutes applying to the subject. The Hillside case concerned a contract for the construction of bridges and it is affected by a statute which is not at all similar to the statute under consideration here. The Hanick case relates to a contract for the construction of a hard surfaced road, and is controlled by statutes relating to roads and highways; the provisions of which are in no way similar to those under consideration here.

Section 12612, Revised Statutes 1919, provides that no hospital building shall be erected or constructed until the plans and specifications have been made therefor and adopted by the board of local trustees, and bids advertised for according to the law relating to other county buildings. The claim is that that brings all matters relating to this construction of a hospital building within the purview of Article 3, Chapter 86, relating to county buildings. That article provides for the manner of entering contracts, advertising for bids, etc. The appellants construe those statutes as requiring a single contract for an entire building, and that a letting of contracts piecemeal is contrary to that section of the statute. It may be said that Section 12616 puts the proceedings to build a hospital under the general law so far as it relates to advertising for bids. But it is argued that even that was violated by entering into private contract with Bell without advertising twice for bids.

The trouble with that position of relators is that they have pointed to no case construing the hospital statute and holding that the proceedings of the hospital board in that respect must conform in all respects to the general law in relation to county buildings. The cases cited do not contain any ruling of that sort, but they all construe statutes which prescribe methods to be pursued, and do not construe any statutes similar to the general provisions of the statute relating to county hospitals. The insuperable objection to relators' position is that they have cited no case construing any statute similar to the hospital statutes relating to the powers given and the duties

imposed upon the hospital board.  No case cited construes any statute where the exclusive control of funds, such as are put into the hands of the hospital board, are given to any like body with similar authority and direction as to its management.  Whether or not the construction of the Kansas City Court of Appeals is correct, it is not shown to be in conflict with any ruling of this court, in the absence of a case where some similar statute is construed in a different way.

II.   This construction of the hospital statute by the Kansas City Court of Appeals is the first that has occurred in any appellate court, so far as we are advised.  It is a new statute which creates a new

**Jurisdiction.** function to be discharged by certain public officials.  It defines the manner in which the officials charged with the practice under their management shall perform their duties, and we cannot hold that the Court of Appeals was without jurisdiction in construing it as they did.  [State ex rel. Security Life Ins. Co. v. Allen, 267 S. W. 379, l. c. 382.]

It was an open question for the Court of Appeals to determine. It follows that the writ in each of the above cases was improvidently issued, and in each it is quashed.  All concur, except *Gantt, J.,* not sitting.