**STATE of Missouri ex rel. Julius GOLD, Appellant,**

v.

**Thomas C. DUNNE, Treasurer of St. Louis County, Missouri, Respondent.**

No. 52801.

Supreme Court of Missouri, Division No. 2.

Dec. 11, 1967.

Byron L. Kinder, David Brydon, Jefferson City, for appellant.

Joseph B. Moore, St. Louis County Counselor, Murry A. Marks, Asst. County Counselor, Clayton, for respondent.

HYDE, Special Commissioner.

Mandamus to compel the Treasurer of St. Louis County to comply with an order of the Governor of Missouri to issue a draft for $15,000.00 to relator. The Governor acting under authority of Sec. 549.020 (statutory references are to RSMo and V.A.M.S.) ordered a remitter of $15,000.00 of $20,000.00 paid on a judgment of forfeiture of a bond for appearance of one Thomas E. Galloway charged with second degree murder. Relator appeals from the judgment dismissing his petition and quashing the writ.

The first question is our jurisdiction which is invoked on the ground that "the construction of the revenue laws of this state" is involved. Sec. 3, Art. V, Const. Sec. 7, Art. IX, Const., provides "the clear proceeds of all penalties, forfeitures and fines collected hereafter for any breach of the penal laws of the state * * * shall be distributed annually to the schools of the several counties according to law." See also Sec. 165.637. In State ex rel. Hadley v. Adkins, 221 Mo. 112, 119, 119 S.W. 1091, 1093, it was held "that the term 'revenue law' covers and includes laws relating to the disbursement of the revenue and its preservation, as well as provisions relating to the assessment, levy, and collection of it," regardless of "where the law is to be found, whether

under the title of 'revenue' or any other title, so long as it relates to the subject-matter of revenue." See also State ex rel. Ginger v. Palmer, Mo.App., 194 S.W.2d 736, decided Mo.Sup.Banc, 198 S.W.2d 10; Pullum v. Consolidated School District No. 5, Stoddard County, 357 Mo. 858, 211 S.W. 2d 30, 32; Mathison v. Public Water Supply Dist. No. 2 of Jackson County, Mo. Sup., 401 S.W.2d 424. The Governor's authority of remission of forfeited funds affects both disbursement and preservation of funds to be used as revenue for operation of schools. Therefore, we hold we have jurisdiction.

The case was submitted on an agreed statement of facts from which the following appear:

March 7, 1963, one Thomas E. Galloway was indicted in St. Louis County for second degree murder.

March 15, 1963, Relator and others signed Galloway's bail bond, Relator acting as attorney in fact for other sureties obligated for $20,000.00.

October 28, 1963, Galloway failed to appear for trial and his bond was ordered forfeited. A motion was filed by the Prosecutor for judgment of bond forfeiture which was sustained November 15, 1963, and execution issued on December 3, 1963, returnable March 2, 1964, prior to which time Relator paid into court $20,000.00.

January 20, 1964, the State filed a motion for the Circuit Clerk to pay the $20,000.00 to the Treasurer of St. Louis County for the School Fund, which was sustained February 7, 1964, and payment was made. Thereafter, Galloway was recaptured, tried and found guilty of second degree murder and is serving sentence therefor in the Missouri Penitentiary.

August 24, 1964, Relator made application to the Governor of Missouri for remitter of the bond forfeiture under the provisions of Sec. 549.020, RSMo V.A.M.S.

September 22, 1964, the St. Louis County Council made an order for the Treasurer to distribute the amount paid by the Relator and other amounts held by him to the school districts of the county and this was done.

January 8, 1965, Honorable John M. Dalton, then Governor of Missouri, issued an order remitting to relator $15,000.00 of the $20,000.00 forfeiture; and ordering the Treasurer of St. Louis County to issue his draft for that amount. The order recited that "Julius Gold expended a great deal of time, money and effort in attempting to locate the said Thomas E. Galloway and return him to the State of Missouri"; that "a great hardship would be suffered" by the sureties "if the forfeiture was not remitted"; and that "equity and good conscience entitle" the sureties "to a remitter."

It was further stipulated: "Respondent, as County Treasurer, has the duty of collecting all such forfeitures as this one and there constantly accrues to him fines, forfeitures and penalties which are to be credited to the school fund and paid out from time to time, as provided by law. At all distribution times since January 1, 1963, this fund, composed of fines, forfeitures and penalties, has far exceeded Fifteen Thousand Dollars ($15,000.00)."

The view of the trial court was "that the respondent lacks authority to make the payment requested by relator after distribution of the fund to the beneficiaries, the school districts, from other funds subsequently obtained." However, it appears that application for remission was made to the Governor the month before the order of the St. Louis County Council distributing the funds to the school districts. Moreover, Relator had no good basis for applying for a remitter until Galloway had been recaptured and returned for trial. Furthermore, "funds of school districts are the property of the state, and not the private property of the school districts," School District of Mexico, Missouri, No. 59 v. Maple Grove School District No. 56,

of Audrain County, Mo.Sup., 359 S.W.2d 743, 746; School District of Oakland v. School District of Joplin, 340 Mo. 779, 102 S.W.2d 909, 915.

The Governor's authority is stated in Sec. 549.020, as follows: "For any fine imposed ·by any statute, and for any forfeiture of a recognizance, where the securities are made liable, the governor shall have power to grant a remitter, when it shall be made to appear to him that there is by such fine or forfeiture an injustice done, or great hardship suffered by the defendant or defendants, which equity and good conscience would seem to entitle such defendant or defendants to be relieved from."

In State v. Wynne, 356 Mo. 1095, 204 S.W.2d 927, 932, we said this section "vests the governor with power, on ex parte hearing, to grant remitter even though the defendant is never produced and even after final judgment on the recognizance." See also Annotation, 77 A.L.R.2d 988–991, for cases permitting remitter after final judgment on order of a governor. Respondent, however, claims the governor has no authority to do so after final judgment when rights of third parties (school districts as distributees) have intervened; and that mandamus is not the proper remedy for relator. Respondent argues that the funds he receives from fines, forfeitures and penalties are trust funds "under jurisdiction of the county court" as provided by Sec. 171.060 (in St. Louis County the County Council, Sec. 6, Art. III, Charter) and are "to be collected annually and distributed as provided in Sec. 161.051" ("at the time of the distribution of state school moneys"). See also 163.081 as to state aid, Laws 1963, p. 200. Respondent further contends the rights of third parties, the school districts of the county, have intervened and this terminates his authority, citing Summit Fidelity & Sur. Co. v. Police Jury of Rapides Parish, La.App., 145 So.2d 395, and Byrum v. Turner, 171 N.C. 86, 87 S.E. 975. In the Louisiana case, the governor did not remit the forfeiture of a bail bond until eight months after the amount of the bond had been paid. The sheriff was entitled to a statutory commission of ten per cent and the district attorney twenty per cent of the amount of the bond and these commissions had been paid to them. The court said: "In the case now before this court, the Governor did not exercise his pardoning power and remit the forfeiture of the bail bond until some eight months after the amount forfeited had been paid to the police jury. The then-vested property rights of this governmental body and of the public officers entitled to commissions or fees for the amount thus collected, could not subsequently be divested by the exercise of the Governor's pardoning power, which extends only to criminal liabilities and which cannot destroy vested civil property rights of individuals or of other governmental units." 145 So.2d l.c. 398. The court mainly relied on cases as to the effect of a pardon to authorize recovery of a fine.

The North Carolina case was such a case, where the appellant after being pardoned by the governor sought return of a fine, which had been paid to the treasurer of board of education, the Court held against the appellant's right to recover it, saying 87 S.E. l.c. 976: " * * * If a fine has been imposed and has been paid into the treasury of the state, or in this state to the treasurer of the board of education, before the pardon is granted, the money cannot be recovered back. [Citations.] But a pardon will work a remission of a fine, although it has been paid, and will entitle the person pardoned to have the money returned if it is still within the control of the executive, and the rights of third persons have not attached." We note Secs. 77.360 and 79.220 granting remission authority to mayors of certain classes of cities provides that this does not authorize the mayor "to remit any costs which may have accrued to any officer of the city by reason of any prosecution." There is no such limitation on the Governor's authority under Sec. 549.020.

■ As to remission of forfeitures, it is said, 37 C.J.S. Forfeitures § 7 p. 24: "A legislature has power to authorize officers or courts to relieve from a forfeiture, even after judgment; and has been held to have power by its own legislative act to relieve from a forfeiture after judgment, even where the forfeiture is for the benefit of a county of the state," citing Conner v. Bent, 1 Mo. 235; see also 36A C.J.S. Fines § 18, p. 459. In Walker v. State, Tex.Civ.App., 103 S.W.2d 404, 406, recovery of full amount paid on a judgment of forfeiture was permitted years later (the defendant for whose appearance the bond was given was dead at the time of the judgment) the court saying: "The judgments sought to be set aside were recovered in the name of the State and the money collected thereon was collected by the State. It is of no particular consequence that the money so collected by the State was later paid by it to one of its political subdivisions. The plaintiff was not required to trace the money into the hands of the ultimate consumer in order to recover it." In that case also the money was required to "be paid over by the officers collecting the same to the county treasurer of the proper county, after first deducting therefrom the legal fees and commissions for collecting the same." The court said (103 S.W.2d l.c. 406), "We attach no particular importance to this provision of the statute." In this case, no officer's fees or commissions are involved but the Governor remitted $5,000.00 less than the amount paid by Relator because of expense to the state caused by flight of the defendant Galloway.

■■ Certainly the voluntary payment of the amount of the bond after judgment of forfeiture, instead of taking an appeal, should not affect the Governor's authority. As stated in Application of Shetsky, 239 Minn. 463, 60 N.W.2d 40, 45, the remedial purpose of such authority (in that case the authority of the court) "to encourage sureties upon default to pay the penalty of their undertaking without putting the state to the expense of litigation—would largely be defeated if a surety making a voluntary payment thereunder were to be penalized by a construction which denied him all right of remission for a justifiable cause." Likewise, efforts by sureties to bring about the return of an escaped defendant, as was done by Relator herein, also would be defeated. Our conclusion is that Sec. 549.020 gives the Governor authority broad enough to authorize him on a timely application to order payment from forfeiture funds in the hands of the county treasurer; and that it is not necessary to trace specific funds paid by a surety to school districts for recovery from them. It being admitted that the county treasurer has sufficient forfeiture funds to make the payment ordered by the Governor, which as we have noted are state owned funds, we hold the Relator is entitled to be paid from such funds the amount the Governor has ordered paid.

■ Respondent's argument about mandamus not being the proper remedy is that Relator has not proven he has a clear unequivocal right, citing cases stating that principle, such as State ex rel. and to Use of Stoecker v. Lemay Ferry Sewer District of St. Louis County, 332 Mo. 965, 61 S.W.2d 724, where mandamus was unnecessary because respondents were willing to act on the basis of a court decision just rendered; State ex rel. Phillip v. Public School Retirement System of City of St. Louis, 364 Mo. 395, 262 S.W.2d 569, where mandamus was denied because the statute under which relief was sought was invalid; State ex rel. Vossbrink v. Carpenter, Mo. Sup., 388 S.W.2d 823, where mandamus was ordered to require payments to county school superintendents from funds appropriated for their additional compensation. It was pointed out in the Vossbrink case that, as in this case, the existence or nonexistence of the funds was not an issue in the case. Of course, mandamus will not lie where rights depend on the determination of a fact question; but even when the result must depend on the determination

of a legal question "the legal question does not have to be so clear that there could be no dispute about it", Perkins v. Burks, 336 Mo. 248, 78 S.W.2d 845, 848. The legal question here is whether Sec. 549.020 gives the Governor authority to make remission of a bond forfeiture after the amount thereof has been paid. Our view is that he has that authority, at least under the circumstances of this case where application for remission was made to him before there was any order of distribution of the forfeiture funds held by the treasurer. It is also our view that the Governor's order has determined the question of Relator's right to be paid.

However, respondent further contends that the Governor's order "that the Treasurer of St. Louis County, to whom said bond was forfeited, issue his draft" to the securities for whom Relator is acting, is invalid because the Governor had no authority to require that method of payment. We must agree that Sec. 549.020 does not give the Governor authority to require a county treasurer "to issue his draft" to the bond sureties. Sec. 549.020 does not so provide and Sec. 303.020 of the ordinances of St. Louis County, adopted under the authority of its constitutional charter, Sec. 18, Art. VI, Const., provides: "The County Treasurer shall pay out monies not belonging to the county, held in any special fund or account for disbursement or transmittal by the county or any officer, employee or agent thereof, on warrants approved and signed by the County Auditor and the County Supervisor and not otherwise." Sec. 27, Art. III of the Charter provides: "The Auditor shall audit all payrolls, accounts, demands and claims against the County, determine the correct amount thereof, draw a warrant on the County Treasury therefor and certify the same to the County Supervisor; * * *." This procedure is in harmony with the statutory requirements for other counties. Sec. 110.240 states the duty of the county treasurer to draw checks to pay warrants. Secs. 50.160, 50.180 and 51.150 provide for ordering and issuance of warrants by the county court and the county clerk. Although we consider the right to payment is clear, because it has been determined by the Governor, so that making payment is a ministerial act, nevertheless the treasurer can only be required to pay when a warrant is issued. We have often held that issuance of a warrant can be compelled by mandamus when there is no fact issue to be determined. We so decided in Perkins v. Burks, supra, 78 S.W.2d l.c. 846, where the issue of the amount due was solely a legal question and we ordered the county judges to issue warrants. Likewise in State ex rel. Strong v. Cribb, 364 Mo. 1122, 273 S.W.2d 246, the order was to require the Presiding Judge of the County Court of Macon County to sign a warrant. See also State ex rel. Baker v. Fraker, 166 Mo. 130, 65 S.W. 720; State ex rel. Holman v. Trimble, 316 Mo. 1041, 293 S.W. 98; State ex rel. Spratley v. Maries County, 339 Mo. 577, 98 S.W.2d 623; State ex rel. Williamson v. County Court of Barry County, Mo.Sup., 363 S.W.2d 691. Although all of the necessary parties are not now before the court, since we have determined that Relator has a meritorious claim, we consider it proper to give Relator an opportunity to amend to include them.

The judgment is reversed and the cause remanded with leave for Relator to amend his petition and include other parties if he so desires.

PER CURIAM.

The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.